# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LEGRAIN WINSTON,<br>MICHELLE STRICKLAND,<br>VERNELL TIMS, I.V. NEWSON, Jr.,<br>SAMUEL PAGE, WILFORD FERGUSON,<br>CECIL WILLIAMS, ANTHONY<br>MANNING, DAVID WALKER,<br>TYRONE MCGHEE and VICTOR<br>SLAUGHTER,<br><br>    Plaintiffs,<br><br>vs.<br><br>SHERIFF OF COOK COUNTY<br>THOMAS J. DART, in his<br>Official Capacity, JOSEPH RANZINO,<br>Individually and in his Official Capacity,<br>GREGORY SHIELDS, Individually and in<br>his Official Capacity, THOMAS NEAL,<br>Individually and in his Official Capacity,<br>CHRISTOPHER ROHLOFF, Individually<br>and in his Official Capacity, and<br>COUNTY OF COOK, ILLINOIS,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 18-cv-5726<br><br><br>Jury Trial Demand |

## **COMPLAINT**

Plaintiffs, LEGRAIN WINSTON, MICHELLE STRICKLAND, VERNELL TIMS, I.V. NEWSON, Jr., SAMUEL PAGE, WILFORD FERGUSON, CECIL WILLIAMS, ANTHONY MANNING, DAVID WALKER, TYRONE MCGHEE and VICTOR SLAUGHTER hereafter ("Plaintiffs") by and through their attorneys, The Herbert Law Firm, make the following complaints against the Defendants, SHERIFF OF COOK COUNTY THOMAS J. DART, JOSEPH RANZINO, GREGORY SHIELDS, THOMAS NEAL, CHRISTOPHER ROHLOFF, and COUNTY OF COOK, ILLINOIS, and states as follows:

## INTRODUCTION

1. This action is brought by Plaintiffs, employees of the Cook County Sheriff's Office, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq., pursuant to 42 U.S.C. §§1981, 1983 and the Illinois Human Rights Act, 775 ILCS 5/1-101 et. seq. to redress the deprivation under the color of law of Plaintiffs' rights as secured by the Illinois and United States Constitutions. Plaintiffs in the course of many years as Cook County Sheriffs' Officers filed numerous complaints in various forums related to claims of employment discrimination and/or civil rights violations. This action seeks to redress the violations of Plaintiffs' civil rights by the Defendants.

2. Plaintiffs further allege that Defendants' policies, practices, and decisions had a disparate impact upon them based on their race, African-American.

3. Plaintiffs seek injunctive and declaratory relief, compensatory damages, punitive damages, and liquidated damages, and reasonable attorneys' fees and costs as remedies for Defendants' violations of their rights.

## JURISDICTION AND VENUE

4. Jurisdiction over Plaintiffs' claims are conferred by 28 U.S.C. §§1331, 1343.

5. Venue is proper in this district pursuant to the general venue statute, 28 U.S.C. § 1391 because all parties reside in this judicial district and the events pertaining to the claims made in this complaint occurred in this district.

6. All conditions precedent to filing suit have been met. Specifically, Plaintiffs, LEGRAIN WINSTON, SAMUEL PAGE, and VICTOR SLAUGHTER timely filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") and the United States Equal Employment Opportunity Commission ("EEOC"), as required by Section 42 U.S.C.

§2000e-5(e)(1) on July 25, 2016; Plaintiff, I.V. NEWSON, Jr. filed same on October 11, 2017. (Attached here as Exhibits "A" through "D").

7. Exhibits "A" through "D" are true and accurate copies of Plaintiffs' charges of discrimination.

8. The United States Department of Civil Rights Division issued "right to sue letters" dated May 23, 2018. (Attached as Exhibits "E" through "H").

9. Exhibits "E" through "H" are true and accurate copies of the right to sue letters.

## PARTIES

10. Plaintiff, LEGRAIN WINSTON, is a male African-American employee of the Defendants, holding the position of Investigator with the Electronic Monitoring Unit of the Cook County Sheriff's Department.

11. Plaintiff, MICHELLE STRICKLAND, is a female African-American employee of the Defendants, holding the current position of Transportation Officer and former position of Investigator with the Electronic Monitoring Unit of the Cook County Sheriff's Department.

12. Plaintiff, VERNELL TIMS, is a male African-American employee of the Defendants, holding the position of Investigator with the Electronic Monitoring Unit of the Cook County Sheriff's Department.

13. Plaintiff, I.V. NEWSON, Jr. is a male African-American employee of the Defendants, holding the position of Investigator with the Electronic Monitoring Unit of the Cook County Sheriff's Department.

14. Plaintiff, SAMUEL PAGE, is a male African-American employee of the Defendants, holding the position of Investigator with the Electronic Monitoring Unit of the Cook County Sheriff's Department.

15. Plaintiff, WILFORD FERGUSON, is a male African-American employee of the Defendants, holding the position of Investigator with the Electronic Monitoring Unit of the Cook County Sheriff's Department.

16. Plaintiff, CECIL WILLIAMS, is a male African-American employee of the Defendants, holding the position of Investigator with the Electronic Monitoring Unit of the Cook County Sheriff's Department.

17. Plaintiff, ANTHONY MANNING, is a male African-American employee of the Defendants, holding the position of Correctional Officer with the Cook County Sheriff's Department.

18. Plaintiff, DAVID WALKER, is a male African-American employee of the Defendants, holding the position of Investigator with the Electronic Monitoring Unit of the Cook County Sheriff's Department.

19. Plaintiff, TYRONE MCGHEE, is a male African-American employee of the Defendants, holding the position of Investigator with the Electronic Monitoring Unit of the Cook County Sheriff's Department.

20. Plaintiff, VICTOR SLAUGHTER, is a male African-American employee of the Defendants, holding the position of Investigator with the Electronic Monitoring Unit of the Cook County Sheriff's Department.

21. Defendant, Thomas J. Dart ("Dart") was, at all times relevant herein, the Sheriff of Cook County.

22. As the duly elected Sheriff of Cook County, Dart operates in his official capacity as the head of the Cook County Sheriff's Department. Dart is responsible for the hiring, training

and supervision of all personnel necessary to operate and maintain the Cook County Sheriff's Department. Dart is sued in his official capacity.

23. Defendant, Joseph Ranzino was, at all times relevant herein, the Chief of Patrol on the Third Watch in the Electronic Monitoring Unit of the Cook County Sheriff's Department. Ranzino was responsible for conducting roll call, assigning duty assignments, granting compensatory time off, and administering discipline to subordinate officers.

24. Defendant, Gregory Shields was, at all times relevant herein, the Executive Director of the Electronic Monitoring Unit of the Cook County Sheriff's Department. Shields was responsible for the oversight and supervision of all subordinate officers, and the administration of discipline for all members of the Electronic Monitoring Unit.

25. Defendant, Thomas Neal was, at all times relevant herein, the Chief of Patrol with the Electronic Monitoring Unit of the Cook County Sheriff's Department. Neal was responsible for conducting roll call, assigning duty assignments, granting compensatory time off, and administering discipline to subordinate officers.

26. Defendant Christopher Rohloff was, at all times relevant herein, a Deputy Chief with the Electronic Monitoring Unit of the Cook County Sheriff's Department. Rohloff was responsible for the oversight of all subordinate officers, and the administration of discipline for all members of the Electronic Monitoring Unit.

27. Defendant County of Cook is a local public entity under the laws of the State of Illinois.

**FACTS PARTICULAR TO LEGRAIN WINSTON**

28. Plaintiff, LEGRAIN WINSTON began his employment with the Cook County Sheriff's Department on or about November 1, 1990.

29. Plaintiff, LEGRAIN WINSTON began working in the Electronic Monitoring Unit of the Cook County Sheriff's Department in and around August 1994 and is currently still working in said unit.

30. On or about April 9, 2015, Chief Ranzino conducted roll call during which he told Plaintiff, LEGRAIN WINSTON that "all of you look alike" referring to the African American Investigators.

31. On numerous other occasions, Chief Ranzino referred to Plaintiff, LEGRAIN WINSTON as "boy" and threatened to have him fired.

32. On or about July 30, 2015, Plaintiff, LEGRAIN WINSTON discussed work-related matters with Director Shields when Shields became hostile and screamed in Winston's face in a threatening manner.

33. On or about August 19, 2015 Director Shields told Plaintiff, LEGRAIN WINSTON "I'm going to try my best to get you fired."

34. Plaintiff, LEGRAIN WINSTON made numerous complaints regarding the above-mentioned incidents; yet, the conduct continued.

## FACTS PARTICULAR TO MICHELLE STRICKLAND

35. Plaintiff, MICHELLE STRICKLAND began her employment with the Cook County Sheriff's Department on or about June 13, 2005.

36. Plaintiff, MICHELLE STRICKLAND eventually began working in the Electronic Monitoring Unit of the Cook County Sheriff's Department.

37. Plaintiff, MICHELLE STRICKLAND was told on numerous occasions that females did not belong in the investigator position and she should get a secretarial position.

38. Plaintiff, MICHELLE STRICKLAND received a 5-day suspension for a specific incident with an inmate; non-minority investigators had an analogous incident occur yet received no discipline at all.

39. Plaintiff, MICHELLE STRICKLAND filed numerous grievances with the Cook County Sheriff's Department against one of the Defendants, Director Shields, regarding the treatment she received regularly but the harassment never ended.

40. Plaintiff, MICHELLE STRICKLAND eventually bid out of the Electronic Monitoring Unit because she could not deal with the constant abuse and harassment from her supervisors.

## FACTS PARTICULAR TO VERNELL TIMS

41. Plaintiff, VERNELL TIMS began his employment with the Cook County Sheriff's Department in and around November 1990.

42. Plaintiff, VERNELL TIMS eventually began working in the Electronic Monitoring Unit of the Cook County Sheriff's Department and is currently still working in said unit.

43. In and around 2012, Chief Ranzino said on a recorded phone call to Director Shields that Tims was the "dumb ass Johnny Cochran nigger" while Tims was on the line.

## FACTS PARTICULAR TO I.V. NEWSON, Jr.

44. Plaintiff, I.V. NEWSON, Jr. began his employment with the Cook County Sheriff's Department on or about February 17, 1990.

45. Plaintiff, I.V. NEWSON, Jr. began working in the Electronic Monitoring Unit of the Cook County Sheriff's Department in and around 2005 and is currently still working in said unit.

46. Plaintiff, I.V. NEWSON, Jr. filed numerous complaints regarding the consistent assignments he received in high incident areas as opposed to the non-minority officers not receiving the same assignments even though they had less seniority and the assignments were to be rotated.

## FACTS PARTICULAR TO SAMUEL PAGE

47. Plaintiff, SAMUEL PAGE began his employment with the Cook County Sheriff's Department on or about April 16, 1986.

48. Plaintiff, SAMUEL PAGE began working in the Electronic Monitoring Unit of the Cook County Sheriff's Department in and around December 1992.

49. In and around 1998, Plaintiff, SAMUEL PAGE received a promotion to Patrol Supervisor for the Third Watch of the Electronic Monitoring Unit.

50. Plaintiff, SAMUEL PAGE was arbitrarily removed from his position as a patrol supervisor; Page brought a grievance to arbitration and was successful; yet, Page never was reinstated to his position as a patrol supervisor.

51. Plaintiff, SAMUEL PAGE's supervisors still expected him to make decisions as if he was still a supervisor even though he was never reinstated as one nor compensated as one.

52. Chief Ranzino threatened to write Page up any time Page spoke up.

53. Plaintiff, SAMUEL PAGE received work assignments that non-minority officers with less seniority never received; specifically, he was consistently assigned to work in the basement even though he had the most seniority and less-senior, non-minority officers were never assigned to work in the basement.

## FACTS PARTICULAR TO WILFORD FERGUSON

54. Plaintiff, WILFORD FERGUSON began his employment with the Cook County Sheriff's Department on or about April 16, 1991.

55. Plaintiff, WILFORD FERGUSON began working in the Electronic Monitoring Unit of the Cook County Sheriff's Department on or about December 27, 1992 and is currently still working in said unit.

56. Plaintiff, WILFORD FERGUSON received discipline when similarly situated non-minority officers did not.

57. Plaintiff, WILFORD FERGUSON's supervisors assigned him to positions non-minority officers were not assigned to regardless of his seniority or work experience.

## FACTS PARTICULAR TO CECIL WILLIAMS

58. Plaintiff, CECIL WILLIAMS began his employment with the Cook County Sheriff's Department on or about March 2, 1993.

59. Plaintiff, CECIL WILLIAMS eventually began working in the Electronic Monitoring Unit of the Cook County Sheriff's Department and is currently still working in said unit.

60. Plaintiff, CECIL WILLIAMS received discipline when similarly situated non-minority officers did not.

61. Plaintiff, CECIL WILLIAMS's supervisors assigned him to positions non-minority officers were not assigned to regardless of his seniority or work experience.

## FACTS PARTICULAR TO ANTHONY MANNING

62. Plaintiff, ANTHONY MANNING began his employment with the Cook County Sheriff's Department on or about October 5, 2014.

63. Plaintiff, ANTHONY MANNING began his employment as a Corrections Officer with the Cook County Sheriff's Department.

64. Plaintiff, ANTHONY MANNING became a Probationary Police Officer; however, he was demoted back to a Corrections Officer on or about March 27, 2015.

65. Plaintiff, ANTHONY MANNING received numerous disciplinary write-ups during his probationary period as a police officer disproportionate to that of non-minority officers.

## FACTS PARTICULAR TO DAVID WALKER

66. Plaintiff, DAVID WALKER began his employment with the Cook County Sheriff's Department on or about February 1, 1991.

67. Plaintiff, DAVID WALKER eventually began working in the Electronic Monitoring Unit of the Cook County Sheriff's Department and is currently still working in said unit.

68. Plaintiff, DAVID WALKER received discipline when similarly situated non-minority officers did not.

69. Plaintiff, DAVID WALKER's supervisors assigned him to positions non-minority officers were not assigned to regardless of his seniority or work experience.

## FACTS PARTICULAR TO TYRONE MCGHEE

70. Plaintiff, TYRONE MCGHEE began his employment with the Cook County Sheriff's Department on or about October 31, 1994.

71. Plaintiff, TYRONE MCGHEE eventually began working in the Electronic Monitoring Unit of the Cook County Sheriff's Department and is currently still working in said unit.

72. Plaintiff, TYRONE MCGHEE has been consistently assigned to work in the "basement" when other non-minority officers with less seniority are assigned to work in the office or less dangerous positions.

## FACTS PARTICULAR TO VICTOR SLAUGHTER

73. Plaintiff, VICTOR SLAUGHTER began his employment with the Cook County Sheriff's Department in and around April 1997.

74. Plaintiff, VICTOR SLAUGHTER began working in the Electronic Monitoring Unit of the Cook County Sheriff's Department in and around 2005.

75. Plaintiff, VICTOR SLAUGHTER is consistently assigned to "TSS" or the basement regardless of his seniority; non-minority officers are very rarely, if ever, assigned to work in the basement.

76. Plaintiff, VICTOR SLAUGHTER received numerous disciplinary write-ups for actions that non-minority officers never received discipline for.

## FACTS RELEVANT TO MULTIPLE PLAINTIFFS

77. Director Shields and subordinate supervisors in the Electronic Monitoring Unit ("EM") failed to follow progressive discipline when they chose to discipline the Plaintiffs.

78. Director Shields and his subordinate supervisors in the EM placed the Plaintiffs in higher incident areas regardless of their seniority over non-minority officers.

79. Director Shields intentionally waited until Plaintiffs Tims and Newson began their tour of duty to assign them to a location where a family had scabies instead of sending the non-minority officers on the earlier watch.

80. Director Shields and his subordinate supervisors in the EM regularly called Plaintiffs words such as "nigger," "crooks," and other derogatory and racist comments.

11

81. Director Shields and his subordinate supervisors in the EM regularly and systemically assigned non-minority officers to office positions and assigned the Plaintiffs to assignments in the basement or higher incident areas.

82. Director Shields and his subordinate supervisors assigned duties to EM investigators based on their race and not based on their seniority or work experience.

83. Director Shields and his subordinate supervisors gave disproportionate discipline to the Plaintiffs as opposed to non-minority officers.

84. Director Shields threatened the Plaintiffs that he would have them fired if they filed grievances for the discipline they received.

85. The Defendants' existent disciplinary processes and procedures provide no meaningful opportunity for the Plaintiffs to an unbiased determination of disciplinary actions.

86. The Defendants' grievance processes and procedures provide no significant remedy for Plaintiffs as their concerns and complaints are heard by the wrongdoers.

**COUNT I**
**DISCRIMINATION ON THE BASIS OF RACE IN**
**VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981**

87. Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1-86 above.

88. Defendants have committed an unlawful employment practice by subjecting Plaintiffs to a hostile work environment in which they were subjected to ongoing intimidation, disproportionate assignments, disciplinary actions, racial intimidation, promotion and other terms and conditions of employment because of their race, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

89.     Defendants conduct has been intentional, deliberate, willful and conducted with disregard of the rights of Plaintiffs.

90.     Defendants knew of the harassment and failed to take prompt, effective remedial action reasonably calculated to end the harassment.

91.     The conduct of the Defendant, Sheriff of Cook County Thomas J. Dart, by and through his employees, especially Defendants Shields, Neal, Rohloff and Ranzino, occurred over several years constituting a continuing course of discrimination towards Plaintiffs.

92.     By reason of Defendants' discriminatory employment practices, the Plaintiffs have suffered severe and substantial damages.  These damages include lost career opportunities, litigation expenses including attorneys' fees, loss of reputation, humiliation, embarrassment, mental and emotional anguish and distress and other compensatory and punitive damages and, as such, are entitled to all legal and equitable remedies available under Section 1981.

## COUNT II
### *Monell* Claim 42 U.S.C. § 1983

93.     Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 - 92 above.

94.     As described in the preceding paragraphs, the Defendants' actions and omissions treated Plaintiffs differently than other similarly situated individuals without any legitimate governmental purpose for doing so and thereby violated their constitutional rights to equal protection.

95.     The misconduct described in this Court was undertaken with willful indifference to Plaintiffs' rights.

96.     The misconduct described in the preceding paragraphs was undertaken pursuant to the policy and practice of Defendants in that:

a. As a matter of both policy and practice, the Cook County Sheriff fails to adequately discipline, supervise and control its supervisory officers, and that its failure to do so manifests deliberate indifference;

b. As a matter of both policy and practice, the Cook County Sheriff fails to properly and fully investigate misconduct by Cook County Sheriff supervisory officers;

c. As a matter of both policy and practice, the Cook County Sheriff facilitates the type of misconduct here by failing to adequately punish and discipline prior instances of similar misconduct;

d. The Cook County Sheriff has failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

97. As a direct and proximate result of the above-detailed actions or omissions of Defendants, Plaintiffs have suffered severe and substantial damages. These damages include lost career opportunities, litigation expenses including attorneys' fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

## COUNT III
### Title VII of the Civil Rights Act of 1964, *as amended* 42 U.S.C. §2000e-2(a)
### Racial Discrimination and Hostile Work Environment

98. Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 - 97 above.

99. As described in the preceding paragraphs, the Defendants committed an unlawful employment practice by subjecting Plaintiffs to racial discrimination and a hostile work

environment by subjecting them to ongoing intimidation, ridicule, disproportionate disciplinary actions, insults based upon their race and disproportionate duty assignments based upon their race.

100. Defendants knew of the harassment and failed to take prompt, effective remedial action reasonably calculated to end the harassment.

101. Defendants failure to take prompt, effective remedial action after being placed on notice by Plaintiffs, did not discourage or stop the harassment or unlawful conduct.

102. The conduct of Defendants occurred over several years constituting a continuing course of discrimination towards Plaintiffs.

103. Defendants acted intentionally and with callous disregard for Plaintiffs' clearly established constitutional rights.

104. As a direct and proximate cause of Defendants' violation of Title VII, Plaintiffs suffered severe and substantial damages. These damages include litigation expenses including attorneys' fees, reputation, humiliation, lost career opportunities, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

## COUNT IV
### Title VII of the Civil Rights Act of 1964, *as amended* 42 U.S.C. §2000e-2(a)
### Retaliation

105. Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 - 104 above.

106. As described in the preceding paragraphs, the Plaintiffs engaged in or were engaging in protected activity protected under federal law that is filing internal complaints, grievances, memorandums and incident reports.

107. Defendants subjected Plaintiffs to adverse employment actions including failure to provide Plaintiffs a safe working environment.

108. Plaintiffs were subjected to the adverse employment actions because of their participation in filing internal complaints, grievances, memorandums, and incident reports that drew attention to various violations within Defendants' control.

109. Defendants' adverse employment actions directed at Plaintiffs would not have occurred but for Plaintiffs filing of internal complaints, grievances, memorandums, and incident reports.

110. As a direct and proximate result of Defendants' violations of Title VII, Plaintiffs have suffered severe and substantial damages. These damages include litigation expenses including attorneys' fees, reputation, humiliation, lost career opportunities, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

## COUNT V
## IDHR – 775 ILCS 5/1-101 et. seq.
## Racial Discrimination and Hostile Work Environment

111. Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 - 110 above.

112. Defendants committed an unlawful employment practice by subjecting Plaintiffs to a hostile work environment in which they were subjected to ongoing intimidation, ridicule, disproportionate disciplinary actions, insults based upon their race and disproportionate duty assignments based upon their race.

113. Defendants knew of the harassment and failed to take prompt, effective remedial action reasonably calculated to end the harassment.

114. Defendants failure to take prompt, effective remedial action after being placed on notice by Plaintiffs did not discourage or stop the harassment or unlawful conduct.

115. Based on these actions, Defendants violated the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-102.

116. As a direct and proximate result of Defendants' violations of IDHR, Plaintiffs have suffered severe and substantial damages. These damages include litigation expenses including attorneys' fees, reputation, humiliation, lost career opportunities, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

## COUNT VI
## IDHR – 775 ILCS 5/1-101 et. seq.
## Retaliation

117. Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 - 116 above.

118. Plaintiffs engaged in or were engaging in activity protected under the IDHR that is filing internal complaints, grievances, memorandums and incident reports.

119. Defendants subjected Plaintiffs to adverse employment actions including failure to provide Plaintiffs a safe working environment.

120. Plaintiffs were subjected to the adverse employment actions because of their participation in filing internal complaints, grievances, memorandums and incident reports that drew attention to various violations within Defendants' control.

121. Defendants adverse employment actions directed against Plaintiffs would not have occurred but for Plaintiffs filing of internal complaints, grievances, memorandums and incident reports.

122. As a direct and proximate results of Defendants' violation of the IDHR, Plaintiffs suffered severe and substantial damages. These damages include litigation expenses including attorneys' fees, reputation, humiliation, lost career opportunities, mental and emotional anguish and distress and other compensatory damages, in an amount to be determined by a jury and the Court.

## COUNT VII
### Negligent Retention Claim vs. Defendants Sheriff of Cook County Thomas J. Dart and County of Cook

123. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 - 122 above.

124. Defendants, Sheriff of Cook County Thomas J. Dart and County of Cook, known or should have known that Defendants Joseph Ranzino, Gregory Shields, Thomas Neal and Christopher Rohloff had a particular unfitness for the supervisory positions with the Cook County Sheriff's Department so as to create a danger of harm to third persons.

125. The unfitness of Defendants Joseph Ranzino, Gregory Shields, Thomas Neal and Christopher Rohloff was known or should have been known and they were permitted continued employment by Defendants, Sheriff of Cook County Thomas J. Dart and County of Cook.

126. Defendants Joseph Ranzino, Gregory Shields, Thomas Neal and Christopher Rohloff and their unfitness proximately caused Plaintiffs' ongoing injury and damages.

## COUNT VIII
### Respondeat Superior – State Law Claim

127. Plaintiffs re-allege and incorporate by reference the allegations set forth in paragraphs 1 - 126 above.

128. In committing the acts in the preceding paragraphs, the Defendants, Sheriff of Cook County Thomas J. Dart, Joseph Ranzino, Gregory Shields, Thomas Neal and Christopher

Rohloff were members of, and agents of the County of Cook acting at all relevant times within the scope of their employment.

129. Defendant, County of Cook is liable as principal for all tortious acts committed by its agents.

## COUNT IX
## Declaratory Relief

130. A present and actual controversy exists between Plaintiffs and Defendants concerning their rights and respective duties.  Plaintiffs contend that Defendants violated their rights under Title VII and the IDHR.  Plaintiffs are informed and believe and thereon allege that the Defendants deny these allegations.  Declaratory relief is therefore necessary and appropriate.

131. Plaintiffs seek a judicial declaration of the rights and duties of the respective parties.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for relief as follows:

 a. For a declaration that Defendants' actions, policies and practices as alleged herein are unlawful;

 b. For lost wages and all other compensation denied or lost to Plaintiffs by reason of Defendants' unlawful actions, in an amount to be proven at trial;

 c. For compensatory damages for Plaintiffs' emotional pain and suffering, in an amount to be proven at trial;

 d. For punitive damages in an amount to be proven at trial;

 e. For liquidated damages;

 f. For interest on lost wages, compensation and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

  g. For an order enjoining Defendants from engaging in the unlawful acts complained of herein;

  h. For reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. §2000-e-5(k), 775 ILCS 5/1-100 et seq., and other laws, and

  i. For such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury.


Dated: August 21, 2018

                Respectfully submitted,

                /s/ Kelly A. Krauchun
                Kelly A. Krauchun (ARDC #6322639)
                The Herbert Law Firm
                206 S. Jefferson, Suite 100
                Chicago, IL 60661
                (312) 655-7660

                /s/ Daniel Q. Herbert
                Daniel Q. Herbert (ARDC #6273940)
                The Herbert Law Firm
                206 S. Jefferson, Suite 100
                Chicago, IL 60661
                (312) 655-7660