**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LEGRAIN WINSTON, *et al*., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 18 cv-05726 |
| v. | ) | |
| | ) | Judge Matthew F. Kennelly |
| SHERIFF OF COOK COUNTY | ) | |
| THOMAS J. DART, *et al*. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, LeGrain Winston, Michelle Strickland, I.V. Newson, Jr., Samuel Page, Wilford Ferguson, Cecil Williams, David Walker, Tyrone McGhee and Victor Slaughter, by and through their attorneys, The Herbert Law Firm, submit the following memorandum in opposition to Defendants' Motion for Summary Judgment.

**INTRODUCTION**

Plaintiffs LeGrain Winston, Michelle Strickland, I.V. Newson, Jr., Samuel Page, Wilford Ferguson, Cecil Williams, David Walker, Tyronne McGhee, and Victor Slaughter, are African American employees who worked as investigators in the Cook County Sheriff's Office's ("CCSO") Electronic Monitoring Unit ("EM"). SOF 1-9. Defendants Joseph Ranzino and Thomas Neal were Chiefs in the EM unit, Gregory Shields was an Executive Director, and Christopher Rohlloff is a Deputy Chief in EM. *Id.* 11-14.

Winston, Page, and Slaughter cross-filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") on July 25, 2016 and Newson cross-filed a charge of discrimination with the EEOC

and IDHR on October 11, 2017 all of which alleged discrimination and harassment based on their race, and retaliation. *Id.* 16.[1]

On August 21, 2018, Plaintiffs filed a Complaint alleging claims of: (1) race discrimination and harassment under Section 1981 of the Civil Rights Act of 1866 (Count I); (2) violations of Plaintiffs' constitutional rights to equal protection under *Monell*, 42 U.S.C. § 1983 (Count II); (3) race discrimination and hostile work environment under Title VII of the Civil Rights Act of 1964, *as amended* 42 U.S.C. § 2000e-2(a) (Count III); (4) retaliation under Title VII of the Civil Rights Act of 1964, *as amended* 42 U.S.C. § 2000e-2(a) (Count IV); (5) race discrimination and hostile work environment under the Illinois Human Rights Act, 775 ILCS 5/1-101 et seq. (Count V); (6) retaliation under the Illinois Human Rights Act, 775 ILCS 5/1-101 et seq. (Count VI); (7) negligent retention claim against Defendant Sheriff of Cook County, Thomas J. Dart and County of Cook (Count VII); (8) Respondeat Superior (Count VIII); and (9) declaratory relief (Count IX).[2]

As an initial matter, in support of Defendant's Motion for Summary Judgment, Director John Webb signed a declaration. While Plaintiffs acknowledge that F.R.C.P. 56(e) provides for such, Webb's declaration is insufficient. It does not satisfy F.R.C.P. 56(e) as it is not based upon personal knowledge; it does not set forth facts that would be admissible as evidence; and it does not set forth or show affirmatively that Webb is competent to testify to the matters stated therein. Mr. Webb was not listed as a witness with knowledge pursuant to Federal Rule of Civil

[1] This Court denied Defendants' motion to dismiss Title VII and IHRA claims of the plaintiffs who failed to file administrative charges finding that the charges filed by Winston, Page, Slaughter, and Newson put the sheriff's office on notice of the relevant allegations and gave the EEOC sufficient opportunity to investigate the alleged misconduct that affected all of the plaintiffs. See Dkt. No. 59, 6/4/2019 Mem. Op. and Order at p. 5.

[2] This Court dismissed Plaintiffs' claims under Section 1981 against Defendants in their official capacity. See Dkt. No. 59, 6/4/2019 Mem. Op. and Order at p. 5.

Procedure 26. In an answer to Plaintiffs' interrogatory to Defendant Shields concerning witnesses not identified in previous disclosures, Defendants wrote, "Director John Webb is the current EMU Director who may have information concerning the claims or defenses in this case." (See Exhibit A – Shields Answers to Interrogatories)

Pursuant to Plaintiffs subpoena, Mr. Webb's deposition was taken on September 17, 2020. Mr. Webb was not designated at a 30(b)(6) witness. Webb's deposition was thorough and comprehensive regarding the allegations in the complaint and was 118 pages of testimony. (**Dkt. 109-1, Ex. Q**). Mr. Webb was not questioned by Defense counsel at the deposition. Despite the comprehensive questioning concerning the allegations made, Mr. Webb did not provide testimony to most of the content of the declaration and in some instances the declaration undermines his deposition testimony. Pursuant to F.R.C.P. 56(e) should be……. and Federal Rule of Evidence 602, both of which require testimony to be based on personal knowledge, the declaration should be stricken. Specifically, Webb's declaration about consistency of assignments lacks foundation is nothing more than opinion testimony which he did not disclose at his deposition. Moreover, any testimony about the promotional process is contradicted by his deposition testimony. Mr. Webb, as well as all individual defendants in this case, were awarded promotions by supervisors without formal application or testing process. (**Dkt. 109-1, Ex. Q** at 12:15-21; 16:5-21; 18:8-12; 29:2-24; 30:3; 31:12-18; 35:3-9; 45:5-19; 72:8-24; 74:7-8; 85:6-16; 86:3-5; 106:4-5; 131:20-21; 165:1-15; **Ex. O** at 21:5-7; 26:10-23; 25:4-21; 33:8-12; 35:14-22; **Ex. N** at 26:22-27:14; 82:16-19; 54:3-9; **Ex. K** at 28-.29 7; 64:1-12; **Ex. H** at 50:9-21; 84:15- 85 21; 90-92; 94-95; 97-99; 109: 9-20). Additionally, Mr. Webb is not qualified to speak to what constitutes discrimination, let alone what was the policy of the Sheriff. (**Dkt. 109-1, Ex. Q** at 92:2-18; 162 15). What is more the evidence demonstrates overwhelmingly that there was no

policy in place which prohibited discrimination in the workplace, specifically directed toward African Americans who were repeatedly referred to by white supervisors as the "N" word; nappy haired; crooks and other crude terms as well as being subject of discriminatory acts in the workplace. (**Dkt. 109-1, Ex. I** at 91:14-92; 105-107; 175 21; 266:6-267:14; 270: 16-271:5; 280: 11-15; **Ex. J** at 37:2-11; 43: 1-12; 44: 13-20; 56-58: 13; 95: 4-9; 112: 9-12; 122: 11-15*;* 126: 16-130; 131:18-23; 134-135: 16; 137:6-138:18; 139:2-12; 145:3-10; 143:7-16; 146:16-22; **Ex. H** at 280-281; 287:21-288: 6: **Ex. L** at 32:9-33:9; 34-39; **Ex. O** at 66:1-20). For all these reasons, Mr. Webb's declaration should be stricken.

## STATEMENT OF FACTS

Plaintiffs fully incorporate herein the Defendants' Local Rule 56.1 Statement of Material Facts, uncontested and contested facts along with Plaintiffs' Local Rule 56.1 Statement of Additional Material Facts.

## LEGAL STANDARD

"Summary judgment is only appropriate when the record reveals that no reasonable jury could find for the nonmoving party." *McCoy v. WGN Continental Broadcasting Co*., 957 F.2d 368, 370 (7th Cir. 1992). If the evidence, considered as a whole, would permit a reasonable fact finder to conclude that Plaintiffs' race and/or Defendants' retaliatory motives caused an adverse employment action, summary judgment must be denied. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Plaintiffs need only make a showing that a jury could find Defendants violated their rights under Title VII – they "need not prove anything at this stage." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), Plaintiffs here have done so.

The Court is tasked with viewing the record in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

255 (1986). At this stage, Plaintiffs do not bear the burden of proof or persuasion, "only that of creating reasonable inferences." *Grace v. Ansul, Inc.*, 64 F. Supp. 2d 788, 791 n.4 (N.D. Ill. 1999). The Court must accept Plaintiffs' "version of any disputed facts . . . [and] any differences between [the parties must be] resolved in [their] favor." *Id.* at 789. "At summary judgment, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Paz v. Wauconda Healthcare and Rehab. Centre, LLC*, 464 F.3d 659, 665 (7th Cir. 2006); *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010). Instead, it must give Plaintiffs "the benefits of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochicinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013).

Under the standards set forth above, Plaintiffs assert that there are genuine factual disputes that would permit the finder of fact to decide that Defendants have unlawfully discriminated against Plaintiffs because they are all African American; because of their internal complaints; and subjected them to a hostile work environment and retaliated against them. Further, Plaintiffs believe there is a genuine factual dispute as to whether this is a policy and practice of the Defendant Cook County Sheriff's Department. Thus, Defendants' Motion for Summary Judgment should be denied.

## ARGUMENT

Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race or color." 42 U.S.C. § 2000e-2(a)(1). The burden of establishing a prima facie case of disparate treatment is not onerous. *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S.

248, 253 (1981). It requires plaintiff to show that she was "rejected under circumstances which give rise to an inference of unlawful discrimination," and the "standard is not inflexible" because facts vary in different cases. *Burdine*, 450 U.S. at 253 and n.6.

Here, in Defendants' summary judgment motion, they only claim that Plaintiffs are unable to establish that they suffered an adverse employment action; and, that there is no evidence to establish employer liability.[3] For all the reasons outlined below, Defendants' arguments are without merit; and accordingly their motion for summary judgment must be denied.

## I. Evidence exists to impose employer liability in support of Plaintiffs' assertions that they experienced a Hostile Work Environment in support of Counts I, III and V.

The question for the Court at the summary judgment state is "whether the evidence would permit a reasonable factfinder to conclude that the Plaintiffs' . . proscribed factor caused the discharge or other adverse employment action." *Ortiz, supra*, 834 F.3d at 754.

> *Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself – or whether just the "direct" evidence does so, or the "indirect" evidence. Evidence is evidence. Relevant evidence must be considered, and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled "direct" or "indirect."*

*Id.* at 765.

Title VII forbids racial discrimination that creates a hostile work environment. *Orton-Bell v. Indiana*, 759 F.3d 768, 773 (7th Cir. 2014)(citing 42 U.S.C. § 2000e-2(a)(1)). Summary judgment on Plaintiffs' hostile work environment claims is inappropriate because there are material issues of fact as to whether: (1) they suffered

---

[3] Defendants do not dispute that the Plaintiffs are all African American and members of a protected class; and, that their job performance was satisfactory.

unwelcome harassment; (2) the harassment was based on their race; (3) the harassment was both subjectively and objectively so severe or pervasive that it altered the conditions of their employment by creating a hostile or abusive working environment; and (4) there is a basis for employer liability. *Yanick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011).

In determining whether a plaintiff was subjected to a hostile work environment, courts must consider all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). In this matter, Plaintiffs have submitted sufficient evidence creating genuine issues of material fact on their hostile work environment claims.

Plaintiffs have direct evidence of discrimination based upon Plaintiffs' race and/or Defendants' retaliatory motives. The discriminatory motive and mindset of the Defendants is proven by an overwhelming amount of evidence in this case; not the least of which is Defendants manufacturing evidence in the disciplinary cases of Plaintiffs Winston and Ferguson which was obtained through the discovery process. After Plaintiffs lodged numerous complaints against Defendant Shields, he fabricated evidence which led charges seeking the termination of Winston and Ferguson. Shields initiated a complaint against Winston and Ferguson for using court time in lieu of a tour of duty. It is undisputed that this practice was wholly accepted by the department and Winston and Ferguson were being targeted with the most serious punishment possible. After the deposition testimony of Defendant Neal it is undisputed that defendants manufactured evidence to charge Plaintiffs Winston and Ferguson. Neal was listed as the complainant in the

case despite the fact that Neal never made the complaint. He did not even know about the incident. Defendants strategically identified Neal as the complainant because he was African American. This was done to conceal the defendants' racial motivation against the Plaintiffs. (**Dkt. 109-1, Ex. H** 218:6-13 and **Ex. O** 124:17-125:8). Neal testified he was unaware that allegations against Shields concerning his confrontation with Winston were sustained. (**Dkt. 109-1, Ex. O** at 121). Neal testified he had never seen the charging document listing him as the complainant in the case. Defendants have lost all credibility in this case and their denials of the facts alleged in this case cannot be trusted and a jury could easily determine that defendants are not credible, and that plaintiffs' rights were violated under the law. This behavior alone should warrant denial of the motion for summary judgment.

**Plaintiffs subjectively believed they were working in a racially hostile work environment.**

Defendants were long-tenured employees working in the EM unit and had good reputations and work histories. While plaintiffs worked for Neal he never had reason to doubt their credibility. (**Dkt. 109-1, Ex. O** at 110:1-3). Neal testified that plaintiffs were knowledgeable on the job and were "damn good workers." (**Dkt. 109-1, Ex. O** at 65:20-66:1). Rohloff testified that of the plaintiffs that worked for him they were all good employees. (**Dkt. 109-1, Ex. N** at 44:6-8; 52-53:1; 56:17-19; 57-58; 60). Nonetheless Plaintiffs were never promoted because Defendants controlled the promotion process and prevented any promotions of the Plaintiffs. Promotions were by appointment not by test. (**Dkt. 109-1, Ex. K** at 24:7-10; 28-29; 31:4-14); Neal never applied for his first promotion to supervisory position. (**Dkt. 109-1, Ex. O** at 21:5-8); Ranzino never applied for promotions; Shield never applied for promotions (**Dkt. 109-1, Ex. H** at 42:1-8; 50:9-23; 84-85:16; 87:6-18; 90-92:5; 94-99; 103:3-8); (**Dkt. 109-1, Ex. I** at 183:9-16; 185: 3-16; 214:13-215:1; 272:16-21; 273:3-8; 283:6-10; 287:14-19).

The defendants controlled the promotional process and discriminated against Plaintiffs in denying them promotions illegally.

**Issues of fact support a claim that Plaintiffs' working environment was objectively offensive.**

Defendants promoted a workplace that was utterly offensive and not only tolerated by the Defendants but prompted by them. They repeatedly referred to Plaintiffs as the "N" word; crooks, all looking alike and nappy haired, among other terms. (**Dkt. 109-1, Ex. I** at 266:6-267:14; 270:16-271:5; 280:11-15; 72:12-14; 137; **Ex. J** at 37:2-11); Rohloff testified that he heard the "N" word used in the workplace and he does not consider all uses of the work in the workplace to be offensive. (**Dkt. 109-1, Ex. N** at 94:16-21; 117:11-20; 118; 119:15-21; 120-121).

**As a matter of law, an individual's harassment cannot be strictly applied to the Cook County Sheriff's department under Title VII.**

The question whether there is a basis for employer liability depends on whether the alleged harassment was perpetuated by supervisors or coworkers. *See Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004); *See generally Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764-65, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Employers are "strictly liable" for harassment inflicted by supervisors . . . *Williams*, 361 F.3d at 1029 (*Citing Ellerth*, 524 U.S. at 756, 118 S.Ct. 2257 and *Faragher*, 524 U.S. at 807-08, 118 S.Ct. 2275).

Under Title VII, "[a] supervisor is someone with power to *directly* affect the terms of the plaintiff's employment." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 506

(7th Cir. 2004). That authority "primarily consists of the power to hire, fire, demote, promote, transfer, or discipline an employee." *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 655 (7th Cir. 2002).

In this case, there is undeniable evidence that the supervisors directly affected the terms and conditions of Plaintiffs' employment. (**Dkt. 109-1, Ex. K** at 64:1-12); Neal's and other supervisors' duties included disciplining those workers of a lesser rank within the EM unit. (**Dkt. 109-1, Ex. O** at 38-39; 40:1-6); Neal was encouraged by his supervisors to increase the level of discipline of those whom he supervised, the majority of which were African American. (**Dkt. 109-1, Ex. O** at 42:8-17; 45-47; 55:3-4; **Ex. I** at 91:11-14; 99:18-20; 126:3-8; 128:2-13; 134:3-7; 151:10-15; 193:10-19; 271:13-20; **Ex. M** at 109:20-110:4). Neal testified that he did not agree with Ranzino's management style. (**Dkt. 109-1 Ex. O** at 57:1-15); Shields improperly sat on grievance panel for Winston whom had filed complaint against him. (**Dkt. 109-1, Ex. L** at 68:14-18).

### II. Evidence exists that Plaintiffs experienced Adverse Actions and Disparate Treatment based on their Race.

Title VII and the other anti-discrimination statutes prohibit "discrimination" (i.e. treating someone differently because of their membership in a protected category like race, religion, or gender) and not "adverse employment actions." *See Minor v. Centocor, Inc.*, 457 F.3d 632, 634 (7th Cir. 2006)("Although hundreds if not thousands of decisions say that an 'adverse employment action is essential to the plaintiff's prima facie case, that term does not appear in any employment-discrimination statute or *McDonnell-Douglas*, and the Supreme Court has never adopted it as a legal requirement. The statutory term is 'discrimination,' and a proxy such as 'adverse employment action' often may help to express the idea – which the Supreme Court has embraced – that it is essential to

distinguish between material differences and the many day-to-day travails and disappointments that, although frustrating, are not so central to the employment relation that they amount to discriminatory terms or conditions. Helpful though a judicial gloss such as 'adverse employment action' may be, that phrase must not be confused with the statute itself or allowed to displace the Supreme Court's approach, which inquires whether the difference is material."). Here, Defendants subjected Plaintiffs to a material difference in treatment.

An essential component of any discrimination claim is the showing of "a discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The essence of the "adverse action" requirement is that the adverse action must materially alter the terms and conditions of employment. *David v. Bd. Trs. Of Cmty. Coll. Dist. No. 508*, 846 F.3d 216 (7th Cir. 2017). To constitute "adverse action," the employment action must be more disruptive than a mere inconvenience. *McKenzie v. Milwaukee County*, 381 F.3d 619 (7th Cir. 2004). Further, the Seventh Circuit has articulated three general categories of actionable, materially adverse employment actions under Title VII. *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007). One category being cases in which the employee is not moved to a different job or the skill requirements of her job altered, but the conditions in which she works are changed in a way that subjects her to humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment. *Id.*

Plaintiffs were treated different than non-African American employees. Ranzino arrested for domestic battery, a major infraction but Ranzino returned to work as

supervisor. (**Dkt. 109-1, Ex. K** at 105:12-15; 109:14-16); Rohloff was given an assignment and he refused to report for the assignment. He was given a reprimand, the lowest level of discipline. (**Dkt. 109-1, Ex. N** at 123-124:8); Ranzino tells employee after roll call, "don't'forget your condems. (**Dkt. 109-1, Ex. N** at 118:13-119). Ranzino returned back to duty in same position. **(Dkt. 109-1, Ex. K** at 123:18-20; 124:23-125:20).

Rohloff violated department policy and was found to have been absent from work without proper authority. He was given the lowest level of discipline: a reprimand. Rohloff violated the same policy a second time and was given a reprimand. Rohloff violated the same policy a third time and was given another reprimand. Rohloff was next found to have violated department policy by failing to properly supervise inventory of property to which he was given a 1-day suspension. (**Dkt. 109-1, Ex. R** at 8:12-17; 16; 21:11-22:22; 39:15-24; 46:14-20. **Ex. J** at 43:1-12 (blacks assigned TSS); 44:13-20 (no whites discipline); 56-58:13; 95:4-9*;* 112:9-12; **Ex. M** at 122:11-15 (retaliation for filing lawsuit). **Ex. M** at 126:16-130; 131:18-23; 134-135:16; 137:6-138:18; 139:2-12; 145:3-10; 143:7-16; 146:16-22; 159:2-160:2; 179:7-16; 183:2-5; 184:3-10).

Rohloff was given a reprimand for failing to shave per department policy. Rohloff does not consider this policy violation serious and should not result in discipline. (**Dkt. 109-1, Ex. R** at 12-15). Ranzino never demoted. (**Dkt. 109-1, Ex. K** at 35:17-20). Ranzino never informed of sustained finding for his comments at roll call, "you all look alike." (**Dkt. 109-1, Ex. K** at 142: 21-145:2; 144); never received discipline for roll call comment (**Dkt. 109-1, Ex. K** at 147:21-24; 152:4-15; 153:12-21; 155:13-23). Shields was never disciplined for sustained finding yelling at Winston **(Dkt. 109-1, Ex. H** at 211:11-212); No non-black officer ever given 5-day suspension for improper search. (**Dkt. 109-1, Ex. L** at 228).

Neal testified that he would only report written complaints of discrimination. **(Dkt. 109-1, Ex. O** at 79:5-80:10). Neal took a day off for medical when he did not have medical time available and was given a reprimand which is the lowest level of discipline. (**Dkt. 109-1, Ex. O** at 85:5-86:10). Neal had a complaint filed against him for a second incident in which he was absent without sick time, the complaint was sustained but Neal did not receive any discipline. (**Dkt. 109-1, Ex. O** at 90-91:14). Neal testified that he was wrongly accused of an inventory issue which was the responsibility of other white supervisors who were never accused of wrongdoing. (**Dkt. 109-1, Ex. O** at 93-94).

**Plaintiffs' Assignments, discipline, and lack of promotions rose to the level of adverse actions.**

Direct evidence of discrimination, that is evidence that, if believed, would prove discriminatory conduct on the part of the employer without reliance or inference or presumption. A plaintiff can prevail under the direct method of proof by constructing a "convincing mosaic" of circumstantial evidence that "allows a jury to infer intentional discrimination by the decisionmaker." *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994). Discrimination can also be demonstrated through direct or indirect methods of proof. Direct proof of discrimination is not limited to near admissions by the employer that its decisions were based on a prescribed criterion, but also includes circumstantial evidence which suggests discrimination albeit through a longer chain of inferences. *Hemmsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Circumstantial evidence demonstrating intentional discrimination includes: (1) suspicious timing and behavior toward or comments directed at other employees in the protected class; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected group; (3) evidence that plaintiffs were qualified for the positions and promotions given to others outside the protected group and the employers reason is

a pretext for discrimination. *Sun v. Bd. of Trs. of Univ. of Illinois*, 473 F.3d 799, 812 (7th Cir. 2007).

**Nothing materially adverse about one assignment versus another in EM.**

The assignment to TSS, in the basement was punishment. (**Dkt. 109-1, Ex. K** at 75-76; 22:13-14; 24:12-20; 85:9-10). Work outside was the preferred assignment as opposed to inside work which was mostly clerical. (**Dkt. 109-1, Ex. P** at 16:18-23; 17:5-9). (**Dkt. 109-1, Ex. I** at 24:11-24; 58:7-9; 60:11-14; 61:1-5; 63:1-6; 67:20-68:1-8; 70; 71:14-20). (**Dkt. 109-1, Ex. J** at 37:2-11:38:8-40; 158:3-7).

**Materially adverse was Plaintiffs' discipline.**

"All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012)(*citing Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007)).

Using court time in lieu of tour of duty was accepted practice before Plaintiffs Winston and Ferguson were brought up on charges. No one had ever been disciplined for using court time in lieu of a tour of duty prior to charges against Plaintiffs Winston and Ferguson seeking their termination. (**Dkt. 109-1, Ex. L** at 24:8-23); Shields never investigated white officers for using court time in lieu of tour duty. (**Dkt. 109-1, Ex. L** at 221:3-8); Rohloff has used court in lieu of a tour of duty. (**Dkt. 109-1, Ex. N** at 101:9-11); Brady allowed investigators to use court time in lieu of a tour of duty. (**Dkt. 109-1, Ex. P** at 30:8-12); (**Dkt. 109-1, Ex. I** at 96); Neal testified that he did not agree with Ranzino's management style. (**Dkt. 109-1, Ex. O** at 57:1-15); Shields improperly sat on grievance panel for Winston who had filed complaint against him (**Dkt. 109-1, Ex. H** at 68:14-18); grievances ignored **(Dkt. 109-1, Ex. I** at 74:5-8).

**Assignments not based on Race.**

African American employees were given less desirable assignments compared to non-African American employees. (**Dkt. 109-1, Ex. N** at 79:17-22); Neal only received complaints about work assignments from Black employees, never from white employees. (**Dkt. 109-1, Ex. O** at 67); approximately 25% of employees were required to work in the TSS unit. (**Dkt. 109-1, Ex. R** at 158:16-23); (**Dkt. 109-1, Ex. I** at 154-155);

**Discipline not connected to Race.**

In cases where the plaintiff alleges that she suffered disparate *discipline*, the plaintiff mush show that the comparator (1) dealt with the same supervisor, (2) was subject to the same standards, and (3) engaged in misconduct of comparable seriousness. *Coleman v. Donahoe*, 667 F.3d 835, 851-52 (7th Cir. 2012); *Brandi v. Superior Air-Ground Ambulance Service, Inc.*, No. 09-c-6019, 2012 WL 1899321, at *4 (N.D. Ill. May 18, 2012). Determining whether an employee is similarly situated to a plaintiff requires a "'common-sense factual inquiry' as to whether there are "sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)(*citing Bellaver v. Quanex Corp.*, 200 F.3d 485, 493 (7h Cir. 2000)(other internal citations omitted). It is not necessary for the comparators to be identical: comparators must be "sufficiently comparable to [plaintiff] to suggest that she was singled out for worse treatment." *Pantoja*, 495 F.3d at 846 (*quoting Crawford v. Indiana Harbor Belt Railroad Co.*, 461 F.3d 844, 846 (7th Cir. 2006)). "Because the similarly situated analysis does not require numerosity, the plaintiff need offer evidence as to only one similarly situated comparator." *Eaton v. Indiana Department of Corrections*, 657 F.3d 551, 556 (7th Cir.

2011)(*quoting Humphries*, 474 F.3d at 406-07).

Neal was encouraged by his supervisors to increase the level of discipline of those whom he supervised, the majority of which were African American. (**Dkt. 109-1, Ex. O** at 42:8-17; 45-47; 55:3-4); (**Dkt. 109-1, Ex. I** at 91:11-14; 99:18-20; 126:3-8; 128:2-13; 134:3-7; 151:10-15; 193:10-19; 271:13-20); (**Dkt. 109-1, Ex. J** at 109:20-110:4).

### III. Plaintiffs' provided sufficient evidence to support their Retaliation Claims and Counts IV and VI must survive.

Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against an employee because he has opposed any practice made an unlawful employment practice by statute of because he has made a charge, testified, assisted, or participated in a relevant investigation, proceeding, or hearing. *Boumehdi v. Plastag Holdings, LLC,* 489 F.3d 781, 792 (7th Cir. 2007)(*citing* 42 U.S.C. § 2000e-3(a)).

Under the direct method, a plaintiff can prove retaliation by presenting direct evidence of (1) a statutorily protected activity; (2) an adverse action taken by employer; and (3) a causal connection between the two. *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003). A plaintiff may offer circumstantial evidence of intentional retaliation, including evidence of suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn. *Id.*(*citing Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)). The causal link of a retaliation claim is frequently established by showing that there was a suspiciously short period of time between the employee's complaint and the **adverse** employment actions. *Boumehdi*, 489 F.3d at 793. (**Dkt. 109-1, Ex. I** at 134:6-7:5 ½ years case sitting for discharge); (**Dkt. 109-1, Ex. I** at 157:6-11; 161-164; 170; 175 21).

Shields knew about the EEOC charges filed against him by Winston prior to charges seeking his termination were filed. (**Dkt. 109-1, Ex. L** at 9-10); Shields knew Winston filed complaint against him before Shields contacted OPR about the case against Winston and Fergusson resulting in termination charges being filed. (**Dkt. 109-1, Ex. L** 28-31:8).

**Supervisors were on notice about Black employees complaints about racial discrimination.**

Neal testified that workers complained to him about being mistreated in the workplace because of being African American. (**Dkt. 109-1, Ex. O** at 58:6-11); Supervisors were aware of plaintiffs complaints. Neal testified that the African American workers complained about the assignments and write-ups given to them by Ranzino and other white supervisors. (**Dkt. 109-1, Ex. O** at 56:10-16; 59:6-24); Neal prevented Winston from exercising his right to file a complaint with OPR against Shields for the confrontation which occurred outside of Shields office before Shields was removed by Director Brady. (**Dkt. 109-1, Ex. O** at 75:8-19; 114:13-115:18). (**Dkt. 109-1, Ex. K** at 52:17-53-6; 53:19-54:3; 117:23-118:4). (**Dkt. 109-1, Ex. L** at 19-20:1-3).

### IV. Plaintiffs did not fail to Exhaust their Administrative Remedies under the IHRA relating to Counts V and VI.

Defendants' argument that Plaintiffs failed to exhaust their administrative remedies regarding Counts V and VI is without merit. Title VII does not require that Plaintiffs complete the state administrative process before instituting a suit in federal court. *See Guse v. J.C. Penney Co., Inc.*¸ 562 F.2d 6, 8 (7th Cir. 1977). The Seventh Circuit held that a plaintiff exhausted her administrative remedies by providing the IDHR with sixty days to act before withdrawing her claim, and that she was therefore "free to file suit in federal court once she received her right to sue letter from the EEOC." *Zugay v. Progressive Care, S.C.*¸ 80 F.3d 901, 903 (7th Cir. 1999).

Title VII requires that "state and local agencies [be] given an initial deferral period of at least sixty days to investigate a charge of discrimination." *Riley v. American Family Mutual Ins.*, 881 F.2d 368, 370 (7th Cir. 1989). *See also* 42 U.S.C. § 2000e-5(c). This deferral period gives "States a reasonable opportunity to act under State law before the commencement of any Federal proceedings." *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 108 S.Ct. 1666, 1672, 100 L.Ed.2d 96 (1988). Nowhere does Title VII state that a plaintiff must complete the state administrative process before starting federal proceedings. *See Guse v. J.C. Penney Co., Inc.*, 562 F.2d 6, 8 (7th Cir. 1977); *Riley*, 881 F.2d at 371.

In fact, when a state agency waives its 60-day deferral period, the plaintiff need not even do this. *See Sofferin v. American Airlines, Inc.*, 923 F.2d 552, 558 (7th Cir. 1991)("We do not believe that a state would be deprived of its reasonable opportunity to act under state law if this state waived its right to process initially certain types of claims pursuant to a worksharing agreement.").

Here, Plaintiffs Winston, Page and Slaughter cross-filed charges with the EEOC and IDHR on July 25, 2016; and Plaintiff Newson cross-filed a charge with EEOC and IDHR on October 11, 2017. (Dkt. No. 1, Compl. 6; Dkt. No. 1, Compl. Exs. B, C, D). On May 23, 2018, the U.S. Department of Justice's Civil Rights Division issued "right to sue letters" to Plaintiffs Winston, Page, Slaughter, and Newson that provided Plaintiffs 90 days to file a federal lawsuit. (Dkt. No. 1, Compl. 8; Dkt. No. 1, Compl. Exs. E, F, G and H). Thus, on August 21, 2018, Plaintiffs filed their complaint with this Court.

As outlined above, the Seventh Circuit has made clear that a plaintiff exhausted her administrative remedies by providing the IDHR with sixty days to act . . . and she was therefore "free to file suit in federal court once she received her right to sue letter from the EEOC."

*Zugay*, 80 F.3d at 903. Additionally, Title VII requires that "state and local agencies [be] given an initial deferral period of at least sixty days to investigate a charge of discrimination." *Riley*, 881 F.2d at 370.

Plaintiffs Winston, Page and Slaughter cross-filed their EEOC and IDHR charges on July 25, 2016 and did not receive a "right to sue" letter until May 23, 2018. Certainly, that exceeds the sixty (60) days deferral period required for the IDHR to investigate their charges of discrimination. Additionally, Plaintiff Newson cross-filed his EEOC and IDHR charge on October 11, 2017 and received his "right to sue" letter on May 23, 2018 as well. Plaintiff Newson's timeframe similarly exceeded the sixty (60) days deferral period required for the IDHR to investigate his charge of discrimination. Thus, Plaintiffs were not required to complete the state administrative process with the IDHR before instituting a suit in federal court. *See Guse*, 562 F.2d at 8; *Riley*, 881 F.2d at 370; *See also* 42 U.S.C. § 2000e-5(c).

Consequently, since Plaintiffs exhausted their state administrative remedies by cross-filing charges with the EEOC and IDHR and allowed the IDHR sixty (60) days to act, they were free to file suit in federal court once they received their right to sue letters from the EEOC.[4] For this reason, Defendants' Motion for Summary Judgment should be denied regarding Counts V and VI.

## V. Plaintiffs' *Monell* Claims are supported by Evidence and Counts VII, VIII and IX must survive.

Plaintiffs asserted § 1983 claims against the Sheriff under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). A local governing body may be liable for monetary damages

[4] This Court denied Defendants' motion to dismiss Title VII and IHRA claims of the plaintiffs who failed to file administrative charges finding that the charges filed by Winston, Page, Slaughter, and Newson put the sheriff's office on notice of the relevant allegations and gave the EEOC sufficient opportunity to investigate the alleged misconduct that affected all of the plaintiffs. See Dkt. No. 59, 6/4/2019 Mem. Op. and Order at p. 5.

under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority. *Monell*, 436 U.S. at 690, S.Ct. 2018; *Valentino v. Vill. Of S. Chi. Heights*, 575 F.3d 664, 674 (7th Cir. 2009).

To demonstrate that the County is liable for a harmful custom or practice, the plaintiff must show that County policymakers were "deliberately indifferent as to [the] known or obvious consequences." *Gable v. City of Chi.*, 296 F.3d 431, 537 (7th Cir. 2002). In other words, they must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff. *Id.* Therefore, in situations where rules or regulations are required to remedy a potentially dangerous practice, the County's failure to make a policy is also actionable. *See Sims v. Mulcahy*, 902 F.2d 524, 543 (7th Cir. 1990)(*quoting Jones v. City of Chi.*¸787 F.2d 200, 204-05 (7th Cir. 1986)).

The courts do not adopt any bright-line rules defining a "widespread custom or practice." As the Seventh Circuit stated in *Cosby v. Ward*, there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, "except that it must be more than one instance," 843 F.2d 967, 983 (7th Cir. 1988), or even three, *Gable*, 296 F.3d at 538. But the plaintiff must demonstrate that there is a policy at issue rather than a random event; this may take the form of an implicit policy or a gap in expressed policies, *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006)(*citing Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005)), or "a series of violations to lay the premise of deliberate indifference." *Palmer*, 327 F.3d at 596. Beyond these threshold requirements, the jury must make a factual determination as to whether the evidence demonstrates that the County had a widespread practice that the alleged

constitutional harm. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 928 (7th Cir. 2004).

**VI. Plaintiffs Negligent Retention, Respondeat Superior and Declaratory Relief Claims, Counts VII, VIII and IX must survive.**

Illinois "recognizes a tort cause of action against an employer for negligently retaining in its employment an employee that employer knew or should have known was unfit for the job as to create a danger to third parties. *Geise v. Phoenix Co.*, 246 Ill. App. 3d 441, 615 N.E.2d 1179, 1187, 186 Ill. Dec. 122, 130 (2d Dist. 1993)(*citing Bates v. Doria*, 150 Ill. App. 3d 1025, 1030, 502 N.E.2d 454, 104 Ill.Dec. 191). Because negligent retention, like negligent hiring, is a negligence tort, "the plaintiff's allegations must establish (1) the existence of a duty of care owed by the defendant to the plaintiff, (2) breach of that duty, and (3) injury to plaintiff (4) proximately resulting from the breach." *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 884 (7th Cir. 1992)(*quoting Puckett v. Mr. Lucky's Ltd.*, 175 Ill. App. 3d 355, 529 N.E.2d 1169, 1172, 125 Ill.Dec. 93, 96 (4th Dist. 1988)(Knecht, J., dissenting)(citations omitted)).

Illinois law is clear that a sheriff is vicariously liable for the negligent acts of his subordinates. 55 ILCS 5/3-6016. On a negligence theory, plaintiffs have adduced facts consistent with their complaint to sustain a *respondeat superior* claim against Dart.

Declaratory relief of the respective parties' rights and duties.

**CONCLUSION**

For all of the foregoing reasons, Plaintiffs request that this Court deny Defendants' summary judgment motion on all counts, and awards Plaintiffs any relief deemed just and appropriate by the Court.

Date: February 25, 2021

Respectfully submitted,

/s/ Daniel Q. Herbert

/s/ Kelly A. Krauchun

The Herbert Law Firm
206 S. Jefferson, Suite 100
Chicago, IL 60661
(312) 655-7660
Dan.herbert@danherbertlaw.com
Kelly.krauchun@danherbertlaw.com
Terri.ryan@danherbertlaw.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that this pleading was served through the Court's electronic filing system.

By: /s/ Daniel Q. Herbert