**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LEGRAIN WINSTON, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | No. 18 CV 5726 |
| | ) | |
| v. | ) | |
| | ) | Hon. Judge Matthew F. Kennelly |
| SHERIFF OF COOK COUNTY THOMAS | ) | |
| J. DART, in his Official Capacity, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

The Cook County Sheriff's Office ("CCSO"), Joseph Ranzino, Gregory Shields, Thomas

Neal, Christopher Rohloff, and Cook County ("Defendants"), by and through the undersigned

counsel, state as follows as their *Reply in Support of their Motion for Summary Judgment*:

I.  **Plaintiffs' Cites Direct to the Record Fail to Comply with LR 56.1(g), and the Court
    Should Deem Defendants' Facts Admitted and Reject Plaintiffs' Purported Facts.**

Under the local rules, facts set forth in response to a motion for summary judgment must,

"cite directly to specific paragraphs in the LR 56.1 statements or responses." LR 56.1(g). Courts

"are entitled to expect strict compliance' with Rule 56.1," and do not abuse their discretion when

disregarding non-compliant facts. *Gbur v. City of Harvey, Ill.*, 835 F.Supp.2d 600, 606–07 (N.D.

Ill. 2012), (citing *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir.2009)); *Shaw v.

Klinkhamer*, No. 03-CV-06748, at *5 n. 2 (N.D.Ill. Jul. 1, 2005) ("[I]t is . . . unfair for either party

to expect the court to spend hours cross-referencing every direct record citation improperly

contained in the [parties'] summary judgment brief[s] with those provided in their L.R. 56.1

Statement of Facts.") (internal quotation omitted). Where, as here, the responding party entirely

ignores its LR 56.1 obligations, "its additional facts may be ignored, and the properly supported

facts asserted in the moving party's submission are deemed admitted." *Gbur*, 835 F.Supp.2d at 606–07; *see also Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809–10 (7th Cir. 2005).

By page three of Plaintiffs' Response, the problem is evident. On that page alone, Plaintiffs string cited five depositions at over 33 locations. After page one of their brief, Plaintiffs *only* cite directly to depositions and exhibits, rather than a Statement of Facts.[1] As one court has said, "that is not how it's done." *FirstMerit Bank, N.A. v. 2200 North Ashland, LLC*, Case No. 12-CV-00572, at *10 (N.D. Ill. Nov. 13, 2014) ("The Court should not have to read 11 exhibits to FirstMerit's Complaint and eight paragraphs of Snelson's affidavit to determine or even to confirm whether FirstMerit's statement is true."). This Court should exercise its discretion to reject Plaintiff's facts, and deem Defendants' properly cited facts admitted. *Cichon*, 401 F.3d at 809–10; *Lasalvia v. City of Evanston*, 806 F. Supp. 2d 1043, 1046 (N.D. Ill. 2011) ("The Court also disregards any citations to the record in the parties' legal memoranda that do not reference their Local Rule 56.1 Statements of Fact.") (citation omitted).[2]

## II.   Plaintiffs' Briefing Does Not Comply with LR 56.1(e)(2) or (3).

The Court should also deem Defendants' facts admitted because Plaintiffs disregarded LR 56.1(e)(2) and (3). Local Rule 56.1(e)(2) prohibits a party from "set[ting] forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made" in response to a movant's statement of facts. In turn, LR 56.1(e)(3) requires a party disputing a fact to, "cite specific evidentiary material that controverts the fact and . . . concisely explain how the

---

[1] Citations abbreviated as: Defendants' Statement of Facts "SOF," Plaintiffs' Response to Statement of Facts "RSOF," Plaintiffs' Statement of Additional Facts "SOAF," and Responses to those "RSOAF."

[2] A byproduct of Plaintiffs' failure to comply with LR 56.1(g) is their ability to effectively bypass LR 56.1(d)(5)'s limit of 40 numbered paragraphs in their SOAF. By page 13 of Plaintiff's Response, there are not less than 45 record citations to depositions, many of which include string cites to five or more locations within each deposition. Ignoring Plaintiffs' non-compliance allows Plaintiffs unlimited facts in its Reply and greatly prejudices Defendants who followed the rules and limited the number of facts they relied upon.

cited material controverts the asserted fact." As the rule makes clear, "[a]sserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3); *see also Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("Denials must cite specific evidentiary materials justifying the denial or be disregarded.") (internal quotation omitted); *see also Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[A] mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material.") (citation omitted). Plaintiffs' Response both fails to provide any specific evidentiary material that controverts Defendants' facts and includes substantial non-responsive new facts.

It would take many pages to set forth all of Plaintiffs' violations of LR 56.1(e)(2) and (3) (which includes the vast majority of the RSOF). Several particularly egregious examples, however, exemplify the improper nature of Plaintiffs' Response. For example, Defendants' SOF ¶ 60 discusses the relative lack of discipline for Plaintiff Walker. SOF at ¶ 60. Plaintiffs' response to that fact simply states "[c]ontested," without any evidence contradicting that fact, followed by cites to entirely unrelated facts that are not fairly responsive to Walker's discipline, such as purported discipline of Defendants Ranzino and Rohloff (violating another provision of LR 56.1(e)(2) ("A response may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made.")). RSOF at ¶ 60. Similarly, Defendants' SOF ¶ 61 discusses Plaintiff Williams's 2014 one-day suspension. SOF at ¶ 61. Plaintiffs again state, "[c]ontested," without citing to any actual evidence that contradicts that fact, and includes the same list of unrelated citations regarding Ranzino and Rohloff. RSOF at ¶ 61.

A third example (of many possible) is Plaintiffs' Response to SOF ¶ 68. SOF at ¶68 states that "[w]hite Investigators complained to Neal about their assignments and Neal explained that 'everybody complained.'" SOF at ¶ 68. Plaintiffs responded by stating "contest," and then citing

a list of facts that are not fairly responsive, including: Shields's alleged approval of assignments; white investigators and black investigators choosing partners; and the bond between partners. RSOF at ¶ 68[3]. Each of these Responses reflects Plaintiffs' failure to comply LR 56.1(e)(2) and (3), and the Court should disregard those responses and deem Defendants' facts admitted.

## III.    Defendants Disclosed John Webb as a Witness, Plaintiffs' Took His Deposition, and Webb Submitted a Proper Declaration Based on His Personal Knowledge.

Plaintiffs spend almost two pages of their brief arguing that John Webb's declaration should be stricken because (among other reasons) he was not disclosed as a witness under Federal Rule of Civil Procedure 26. Pls.' Memo at 2–4. Plaintiffs' argument is specious at best. Defendants disclosed Webb as a witness in their February 24, 2020 Amended Mandatory Initial Disclosures Project disclosures. *See* February 24, 2020 email from E. White to K. Krauchun, attached hereto as Exhibit 1.[4] Plaintiffs' other challenges to Webb's affidavit are similarly unavailing.[5]

Plaintiffs claim that Webb's declaration is not based on personal knowledge and he is not competent to testify to the matters in the declaration. Pls.' Memo at 2–4; RSOF at ¶19, 23–24, 26, 45, and 96–99. Federal Rule of Evidence 602 provides, "[e]vidence to prove personal knowledge may consist of the witness's own testimony" and "an affiant's personal knowledge may be inferred

---

[3] This same pattern of improper response is found (at a minimum) in Plaintiffs' Response to Defendants' SOF ¶¶ 16, 26, 31, 33, 37, 39, 41–42, 44, 48, 50, 53–54, 57, 65, 69–71, 73, 81, 87–89, 100, and 105–108.

[4] Defendants also identified Webb in an interrogatory response (*see* Pls.' Memo at 3) and Plaintiffs took what they characterize as a "thorough and comprehensive" deposition of Webb (*id.*).

[5] In their Response to Defendant's SOF, Plaintiffs broadly allege that Webb's declaration is inadmissible hearsay. *See* RSOF at ¶¶19, 23–24, 26, 45, and 96–99. As Plaintiffs themselves concede, however, declarations are not considered hearsay when considered at summary judgment. *See* Pls.' Memo at 2; Fed. R. Civ. P. 56(c)(4); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994)). Furthermore, the proper place for legal arguments about admissibility is Plaintiffs' memorandum of law, not the response to statement of facts. *See* LR 56.1(e)(2) (noting that "[a] response may not assert legal arguments except to make an objection" and that arguments about the admissibility should instead "be included in [a party's] response or reply brief.") And while Plaintiffs promised to address the hearsay objection in their reply memorandum (RSOF ¶¶ 24 and 26) the word "hearsay" does not appear in their memorandum. The hearsay objection should be disregarded on both substantive and procedural grounds.

from the affidavit itself . . . ." *Woods v. Amazon.com, LLC,* No. 17-CV-4339, at *6 (N.D. Ill. Jul. 1, 2020)). Webb swore, under penalty of perjury, that he has personal knowledge of the information in his Declaration. Dkt. 109-1, Ex. S. His years in the Electronic Monitoring ("EM") unit make him competent to testify regarding job assignments, expectations, and requirements (*id.* at ¶¶ 5-7); policies and procedures (*id.* at ¶¶ 8, 17); roles and responsibilities (*id.* at ¶¶ 9-10); the discipline process (*id.* at ¶¶ 11); and promotions (*id.*at ¶¶ 12-16); among other subjects.

Further, despite Plaintiffs' "thorough and comprehensive" deposition of Webb (Pls.' Memo at 3), they do not cite a single answer from his deposition that contradicts or is in any way inconsistent with his declaration. Instead, Plaintiffs include an improper string cite of at least five other depositions which apparently undercut Webb's declaration (although Plaintiffs decline to articulate how, exactly, the cited deposition transcripts contradict Webb's declaration). Finally, Plaintiffs argue Webb is "not qualified to speak to which constitutes discrimination, let alone what was the policy of the Sheriff." Pl's Memo. at 3. To be clear, Webb's declaration says nothing about what he believes constitutes discrimination,[6] and Plaintiffs provide no reason to conclude Webb is not qualified to discuss CCSO policies. The Court should not strike Webb's declaration on the basis of Plaintiffs' specious argument. *See Arachnid Inc. v. Valley Rec. Prods. Inc.,* No. 98-cv-50282, at *1 (N.D. Ill. Dec. 27, 2001) (declining to strike a declaration because "despite its promise to do so, [Plaintiff] never point[ed] out the claimed inconsistencies" between the declaration and the deposition testimony). Defendants properly disclosed Webb, Plaintiffs deposed him, his declaration is based on personal knowledge form his years of service, and is entirely appropriate.

## IV. Plaintiffs Waived Any Argument That Their Allegations Are Not Time-Barred.

---

[6] The Webb testimony Plaintiffs cite does not even support this claim: Plaintiffs asked Webb about an EEOC Charge (Pl's Memo at 3, *citing* Dkt. 109-1, Ex. Q at 92:2-18) and steps he took as director to prevent discrimination (*id.* at 162:15).

Plaintiffs failed to respond to Defendants' argument that many of their allegations are time-barred. Where a party fails to respond to an argument, that response is waived and the point is conceded. *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."). Defendants' Motion explained that there is little to no record evidence of purportedly discriminatory conduct that falls within the 300-day time limit imposed by Title VII or the IHRA. Mot. at 14. Nor is there record evidence that even older actions (or inactions), particularly those asserted by Winston or Williams, fall within Section 1981's four-year statute of limitations. *Id.* Indeed, apart from vague references to undated events, Plaintiffs provide no basis to conclude *any* alleged wrong-doing falls within *any* applicable time limit. Because Plaintiffs' Response fails to respond to these arguments, they have conceded that their untimely employment actions (which appear to be *all* their alleged actions) are time-barred.

## V.     Plaintiffs Lack Any Evidence of a Subjectively or Objectively Hostile Workplace.

Plaintiffs' Reply fails to set forth facts or argument from which a reasonable jury could conclude that their workplace was subjectively or objectively hostile. The parties agree on the requirements for stating a claim of discrimination based on hostile work environment. *Compare* Mot. at 7, *with* Pls.' Memo at 6–7.[7] Yet from that point of agreement, Plaintiffs lay out a meandering, near stream-of-consciousness, recitation of "facts" without any citation—much less a proper citation under the Court's Local Rules–concluding: the "discriminatory motive and mindset of the Defendants is proven by an overwhelming amount of evidence." Pls.' Memo at 7.

---

[7] Plaintiffs must show: (1) they were subject to unwelcome harassment; (2) based on their race; (3) that was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. See e.g. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 900 (7th Cir. 2018)); *Yanick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011).

Plaintiffs present an apparent timeline of "undisputed" (and new) events that does not even appear in their SOAF or Defendants' SOF, making any reply difficult. *Id.*

    **a.    There Is No Evidence Plaintiffs' Workplace Was Subjectively Hostile.**

Plaintiffs provide practically no response to Defendants' argument that they lack evidence of their subjective belief of a hostile work environment. Pls.' Memo at 8–9. Defendants presented evidence that few Plaintiffs even claimed they heard racist language in the workplace, let alone reported any. Mot. at 4–5. Even construing the evidence in the light most favorable to the Plaintiffs, for the few Plaintiffs who testified they heard racist language, it occurred years ago, in one-time events, and they did not report it to anyone. *Id.* Plaintiffs' Response does not rebut that evidence. Instead Plaintiffs respond with immaterial claims about their job performance and lack of promotion. Pls.' Memo at 8. Because Plaintiffs failed to provide any evidence of their subjective belief they suffered unwelcome harassment, they have waived that argument and summary judgment must be entered. *Nichols*, 755 F.3d at 600.

    **b.    Plaintiffs' Workplace Was Not Objectively Hostile.**

Nor could any jury reasonably find that Plaintiffs' workplace was objectively hostile. Mot. 6–7. The majority of Plaintiffs lack evidence of any racist remarks being uttered in the workplace or reporting such remarks, and no Plaintiff has any evidence of encountering physically threatening or humiliating behavior. *Id*. at 4, 7. There is simply no evidence of conduct that a reasonable person would find hostile or abusive. *See Smith v. Ill. Dep't of Transp.*, 936 F.3d 554, 561 (7th Cir. 2019). Plaintiffs' response to Defendants' arguments consists of two sentences that lack any proper citation to record evidence of purportedly hostile conduct. Pls.' Memo. at 9. Those two sentences fail to address Defendants' argument, and instead improperly (and misleadingly) cite testimony

from two plaintiffs and one defendant which do not address this issue.[8] *Id*. Plaintiffs' failure to even attempt to prove the existence of an objectively offensive work environment is fatal to their claim.

### c.    Plaintiffs' Argument Regarding Neal's Complaint Register Is Immaterial.

Plaintiffs correctly identify the type of evidence that supports a hostile work environment: frequency and severity of discriminatory conduct, whether it is physically threatening or humiliating, and whether it interferes with the employee's work performance. Pls.' Memo. at 7. But instead of setting forth that kind of evidence, Plaintiffs' Response outlines a purported scheme to "manufacture evidence in a disciplinary case against Plaintiffs Winston and Ferguson . . . ." *Id*. This "evidence" has nothing to do with a hostile work environment. At best, Plaintiffs claim Defendants lack "credibility" because Defendant Neal testified he had not seen an unsigned copy of a complaint register regarding Winston and Ferguson. Pls.' Memo. at 7–8, citing Dkt. 109-1, Ex. O at 124:17–125:8. But as explained in Defendants' Response to SOAF at ¶ 32, Plaintiffs showed Neal an unsigned copy of his complaint register—even though they have the signed and notarized version, which they now attach as an exhibit. *See* RSOAF at ¶ 32, Ex. 7. Plaintiffs cite no record evidence to prove Neal did not actually sign the document, and chose not to ask him about that at his deposition. Evidence that Neal did not recognize the unsigned document provides no support for Plaintiffs' hostile work environment claims, which crumple under basic scrutiny. It

---

[8] Plaintiffs' bold claim that Defendants "repeatedly referred to Plaintiffs as the "N" word; crooks, all looking alike and nappy haired" is undercut by a closer examination of their improper string cites. Pls.' Memo at 9. They include a single cite to Winston's claim that unknown persons came to him and said they heard that Ranzino had called Winston (and Winston only) the "N" word (id., citing Dkt. 109, Ex. I at 280:11-15); and a single cite, again to Winston (and Winston only), that he heard the term "nappy head" used once (id. at 266:6-267:14). Far from "repeated" use of this language, Plaintiffs only cites those two instances from one Plaintiff, as every other cite has nothing to do with the use of racial language. What is more, these "generalized assertions" are precisely the type of evidence the Court may properly reject because, "without knowing who discriminated, what they did, and when they did it, the court [has] no way of knowing what to make of this evidence." Smith v. Ill. Dep't of Transp., 936 F.3d 554, 559 (7th Cir. 2019) (trial court did not abuse its discretion in not considering generalized assertions). It

appears it is not Defendants who lack credibility, but rather Plaintiffs, who are attempting to present testimony regarding an unsigned document as a stand in for the actual signed document.

## VI.    There is No Basis to Impose Title VII Employer Liability.

The parties agree that misconduct can only be imputed to the CCSO only if the perpetrators were supervisors, rather than coworkers. Mot. at 8–9; Pls.' Memo. at 9–10. The parties further agree that the controlling definition of a supervisor is someone who has the power "to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Mot. At 8, (citing *Wazny v. City of Chi.*, No. 17-CV-6871, at *8 (N.D. Ill., Apr. 19. 2019)); Pls.' Memo. at 10. Defendants' Motion set forth evidence that none of the individual Defendants possessed such powers and that the CCSO could not have been negligent in discovering harassment that was never reported to it. Mot. at 8–9. In response, Plaintiffs do not rebut any of the facts or arguments, and instead only argue that Defendant Neal disciplined some of the Plaintiffs. Notably, in the very case Plaintiffs rely on, the Seventh Circuit held, "he fact that an employer authorizes one employee to oversee aspects of another employee's job performance does not establish a Title VII supervisory relationship. An individual is not a supervisor unless he possesses the authority to directly affect the terms and conditions of a victim's employment." *Hall v. Bodine Electric Company*, 276 F.3d 345, 355 (7th Cir. 2002); Pls.' Memo at 10. Even if Plaintiffs properly cited to record evidence of Neal's discipline, it is not enough to establish employer liability, and does not even address the record evidence that no individual Defendant could hire, fire, demote, promote, or transfer employees. There is no basis for employer liability.

## VII.   Plaintiffs' Have No Evidence of Any Adverse Employment Actions or Racially Motivated Disparate Treatment.

Defendants' argued that Plaintiffs had no evidence of suffering adverse actions or disparate treatment on the basis of their race. Mot. at 9–16. Plaintiffs' Reply begins with confusing legal gymnastics in which they first argue that an adverse action is not required for a Title VII claim (Pls. Reply. at 10), and then quote *Ortiz v. Werner Enterprises, Inc.*, for the *opposite* proposition – that "discharge or other <u>adverse employment action</u>" is an essential component of any discrimination claim. Pls.' Memo. at 11 (citing *Ortiz*, 834 F.3d 760, 765 (7th Cir. 2016) (emphasis added)). Finally, Plaintiffs point to a particular category of actionable adverse action that is recognized, in which "conditions in which [a plaintiff] works are changed in a way that subjects [him or her] to humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alterations in her workplace environment." Pls. Memo. at 11 (citing *Lewis v. City of Chicago*, 496 F.3d 645, 652 (7th Cir. 2007)). Plaintiffs never return to that standard or any other, and fail to offer record evidence of such discriminatory conditions, dooming their discrimination claims.

### a.     There Are No Adverse Actions in the Form of Assignments or Discipline.

Plaintiffs include two short sections in support of their discrimination claims that appear to contend assignments and discipline were materially adverse to Plaintiffs. The first, aptly titled "[n]othing materially adverse about one assignment versus another in EM," states only that assignment to TSS was punishment and that outdoor work was preferred. Pls.' Memo. at 14. Even if some Plaintiffs believed they received an assignment to TSS as punishment, there is no evidence connecting that assignment (or punishment) to their race. As Defendants explained (Mot. at 11-12), refusing to grant someone their preferred assignment is not an adverse action. *Emerson v. Dart*, 14-cv-5898, at *8 (N.D. Ill. May, 17, 2017) (holding a "purely subjective preference for one position over another…do[es] not justify trundling out the heavy artillery of federal antidiscrimination law."); *Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 745 (7th Cir. 2002)

As to discipline, it is now undisputed that: (1) CCSO did not terminate or demote any of the Plaintiffs, only a subset were even suspended for a few days, and only two of whom have termination charges pending (Mot. at 12 (citing SOF ¶¶ 55–58, 60–63)); (2) EM management is not responsible for making discipline decisions, which is done by a separate unit (Mot. at 12 (citing SOF ¶ 53)); and (3) the majority of Plaintiffs testified and agreed that any discipline they received had nothing to do with their race (Mot. at 12–13). Plaintiffs' Reply argues only that Plaintiffs Winston and Ferguson were "brought up on charges" for "[u]sing court time in lieu of tour of duty." Pl's Memo. at 14. Yet even for those two Plaintiffs, there is no connection between their race and the discipline charges they face. In fact, Plaintiffs fail to mention two important facts about that incident—first, that no discipline has yet been imposed for their time theft (which remains pending as of this filing); and second, that two non-African American employees who were with Winston and Ferguson that day face the same charges for the same incident. *See* SOF at ¶ 58. Plaintiffs offer nothing more, and thus fail to overcome the substantial undisputed record evidence that neither assignments nor discipline were adverse actions as a matter of law.

    **b.    There is No Evidence of Any Racially Based Disparate Treatment.**

Plaintiffs make the conclusory statement that they "were treated different[ly] than other non-African American employees." Pls.' Memo. at 11. But from there, they simply (and again improperly) string cite various portions of testimony to show alleged disciplinary infractions by *Defendants*, without any reference to how any Plaintiff was treated differently based on their race.[9] Plaintiffs cannot simply point to Defendants disciplinary histories, standing entirely alone, as

---

[9] Beyond failing to comply with the local rules, the improper string cites are further problematic. As an example, Plaintiffs cite Ranzino's deposition and claim he was "arrested for domestic battery." Pls.' Memo. at 11, citing Dkt. 109-1, Ex. K at 105:12-15; 109:14-16. In fact, Ranzino testified that he was arrested for "misdemeanor battery" in a "melee at a bar," that was "nolle prossed," not domestic battery. *Id.* at 105:15-106:17.

support for a claim Plaintiffs were treated differently—much less treated differently on the basis of their race. Particularly where, as here, the proffered comparators are not in the same job as Plaintiffs, and one of them is actually African-American. *See, e.g.,* SOAF at ¶ 28.

Plaintiffs include two other sections of argument that appear to address disparate treatment. The first, titled "Assignments not based on Race," (a position with which Defendants agree) includes two sentences. Pls.' Memo. at 15. The first states that African American employees were allegedly given fewer desirable assignments. *Id.* Yet the record Plaintiffs cite for that proposition is to a discussion of CCSO policies, <u>not</u> disparate assignments. *Id.* The second sentence, in which Plaintiffs claimed Neal only received complaints from Black employees, provides no insight into disparate treatment—only that one Defendant believed his Black employees complained more.[10] Worse still, Plaintiffs cite a deposition (Dkt. 109-1, Exhibit R) at page 158 when the deposition only contained 64 pages. Plaintiffs' two sentence rebuttal provides them no support.

Plaintiffs final disparate treatment section concerns discipline. Pls.' Memo. at 15–16. Most Plaintiffs agreed their discipline was not connected to race or had not been disciplined at all. Mot. at 16 (citing SOF ¶¶ 55–57 and 60–63). Winston and Ferguson, had not even received discipline at the time of their deposition, much less any tied to their race. *Id.* (citing SOF ¶ 58). In their Reply, Plaintiffs cite case law as to what constitutes a comparator and then, in a single sentence, state only that "Neal was encouraged by his supervisors to increase the level of discipline of those whom he supervised, the majority of which were African American." Pls.' Memo. at 16. First, that is not evidence of disparate treatment. If anything, it shows equal treatment, as Neal was allegedly

---

[10] It also misstates Neal's testimony. Plaintiffs claim "Neal only received complaints about work assignments from Black employees, never from white employees." Pls. Memo at 15 (citing Dkt. 109-1, Ex. O at 67). However, Neal testified that he "had a couple" of white employees who complained about their job assignments (SOF ¶ 68), while the testimony Plaintiffs cite concerns *requests* for a particular assignments (Dkt. 109-1, Ex. O at 67:11–22.)

disciplining *all* of his supervisees equally. Second, and more importantly, that assertion does nothing to rebut Defendants' detailed argument, citing directly to evidence in the SOF, that Plaintiffs cannot tie any of their discipline to their race (nor do any even believe that it was, despite filing this lawsuit). The undisputed record is that discipline had nothing to do with race.

Finally, although Plaintiffs' Complaint alleged lack of promotion as part of their Title VII claim (Compl. at ¶88), Plaintiffs failed to respond to Defendants' argument that they failed to apply for any promotions. Mot. at 13–14. Plaintiffs cannot support a Title VII claim because they have admitted, and the evidence shows, that they never sought a promotion.

## VIII. Plaintiffs Concede Only Two Plaintiffs Engaged in Protected Activity and Fail to Tie the Alleged Protected Activity to Any Adverse Action.

Only two Plaintiffs (Winston and Walker) contend they engaged in protected activity and suffered retaliation. Mot. at 17 (citing SOF at ¶¶ 31, 35). But those two plaintiffs fail to tie their alleged protected activity to any cognizable adverse employment action. *Id.* Plaintiffs' Reply does not dispute that the other Plaintiffs did not engage in protected activity, and seems to contend only that Shields knew Winston filed an EEOC Charge prior to contacting the Office of Professional Review regarding Winston's time theft. Pls.' Memo. at 17. The problem is, like many of Plaintiffs' citations to the record, this is utterly unsupported by the record evidence. For example, Shields unequivocally said he had no idea when the EEOC Charge was filed. *See* RSOAF at ¶¶ 33 (Shields testified that he was "not sure when [he] became aware of [the EEOC complaints]" and Plaintiff's counsel made clear he was "not asking when" Shields became aware). Similarly, while Shields was questioned as to "sitting on the second step of the grievance process with respect to Winston," his testimony provides no clear timeline. *See* RSOAF at ¶ 34 (Shields testified that he did not remember being part of the disciplinary process in an OPR investigation by Winston and did not "remember the dates" of the incidents or the complaints). Beyond that, Plaintiffs improperly cite

to vague complaints by unknown employees, without any reference to any adverse action. Pls.'
Memo. At 17. That is insufficient for Plaintiffs, in this "put up or shut up" moment, to overcome
summary judgment. *See Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 901(7th Cir. 2003).

## IX.     Exhausting an EEOC Charge Is Not the Same as Exhausting an IDHR Charge.

Plaintiffs failed to exhaust their Illinois Human Rights Act ("IHRA") claims through the
Illinois Department of Human Rights ("IDHR") which deprives this Court of jurisdiction to hear
Counts V and VI. Mot. at 18. Plaintiffs' Reply focuses on whether they can bring their Title VII
claims prior to exhausting their administrative IDHR remedies. Pls.' Memo. at 17–18 ("Title VII
does not require that Plaintiffs complete the state administrative process before instituting a suit in
federal court."). But that misses the point. Defendants are not arguing that a Title VII claim,
exhausted through the EEOC, cannot be brought while a charge is still pending at the IDHR.
Rather, under well-settled law, *an IHRA claim* cannot be brought prior to a final order from IDHR.
*Talley v. Washington Inventory Service*, 37 F.3d 310, 312–13 (7th Cir. 1994) ("[J]udicial review
is only available under the [IHRA] after the Human Rights Commission has issued a final order
on a complaint."); *Garcia v. Village of Mount Prospect*, 360 F.3d 630 (7th Cir. 2004) (holding that
"[t]he administrative process under the Act must be completed before a circuit court can exercise
jurisdiction over these types of claims" and collecting cases).[11] Plaintiffs could have obtained a
final order, or Right to Sue, from IDHR since filing this lawsuit and demonstrated administrative
exhaustion. They have not, and this Court is without jurisdiction over Counts V and VI.

## X.     Plaintiffs' Provide No Argument in Support of Their *Monell* Claim.

---

[11] It is worth noting that the distinction is not lost on Plaintiffs, as Plaintiffs' counsel conceded in a separate
case that an IHRA claim cannot proceed without a final order from the IDHR. *Gaines v. Dart*, No. 20-CV-
03487, at *6 (N.D. Ill. Feb. 4, 2021) (noting that the plaintiff— represented by same law firm that represents
Plaintiffs here— "'concede[d] that Counts III and IV are untimely as the IDHR has not issued a final order'"
and therefore dismissing the case for lack of jurisdiction)

Plaintiffs' *Monell* claim barely requires discussion. In response to Defendants' argument as to why the claim fails as matter of law, Plaintiffs merely recite the legal standard for *Monell*. Resp. at 19–20. Plaintiffs do not include a single cite to any record evidence sufficient to impose liability or even rebut Defendants' arguments. Summary judgment must be entered as to Count II.

## XI. Plaintiffs Concede Their Negligent Retention Claim is Time-Barred and Their Respondent Superior and Declaratory Judgment Claims Remain Unsupported.

Much like Plaintiffs' *Monell* "argument," their rebuttal to Defendants' argument to enter judgment against Plaintiffs on their negligent retention claim (Count VII) is nothing more than a recitation of the legal standard. Pls.' Memo. at 21. Plaintiffs do not challenge, and therefore concede, Defendants' argument that the claim is untimely under the Tort Immunity Act. Mot. at 19. Beyond that, Plaintiffs point to nothing in the record to support this claim. Since Plaintiffs' tort claim fails, so does their claim for respondeat superior, as respondeat superior is not a standalone cause of action. *Simon v. Nw. Univ.*, 183 F.Supp.3d 908, 919 (N.D. Ill. 2016). Plaintiffs single sentence, that "plaintiffs have adduced facts consistent with the complaint to sustain a respondeat superior claim," (Pls. Memo. at 21) is both factually unsupported and legally insufficient, and summary judgment must be entered. Finally, Plaintiffs' argument to save their declaratory judgment claim (Count IX) is not even a complete sentence. *Id.* It hardly needs saying that Plaintiffs' argument in opposition, "[d]eclaratory relief of the respective parties' rights and duties," is insufficient to overcome summary judgment.

## CONCLUSION

Based on the foregoing, Defendants respectfully requests the Court enter summary judgment in their favor, dismiss Plaintiffs' Complaint with prejudice, award Defendants their costs and fees in defending this action, and grant additional relief as the Court deems appropriate.

Dated: March 19, 2021

DEFENDANTS

By: /s/ Justin L. Leinenweber
**LEINENWEBER BARONI & DAFFADA LLC**
120 North LaSalle Street, Suite 2000
Chicago, Illinois 60602
(866) 786-3705
justin@ilesq.com

By: /s/ Ethan E. White
**EMERY LAW, LTD.**
2021 Midwest Road, Suite 200
Oak Brook, Illinois 60523
(630) 984-0339 (direct)
ewhite@emerylawltd.com

*Special State's Attorney for Defendants*

## CERTIFICATE OF SERVICE

I, the undersigned, being first duly sworn upon oath, depose, and say that I caused to be served the foregoing document by electronically filing the same with the Clerk for the U.S. District Court for the Northern District of Illinois, Eastern Division, a copy of which was then forwarded to each attorney of record by CM/ECF on March 19, 2021.

RESPECTFULLY SUBMITTED,

Dated: March 19, 2021                    By: /s/ Ethan E. White

**EMERY LAW, LTD.**
Ethan E. White
2021 Midwest Road, Suite 200
Oak Brook, IL 60523
(630) 984-0339 (direct)
ewhite@emerylawltd.com

# Exhibit 1

**From:** **Ethan White** ewhite@emerylawltd.com 
**Subject:** Winston v. CCSO
**Date:** February 24, 2020 at 10:14 AM
**To:** Kelly Krauchun kelly.krauchun@danherbertlaw.com
**Cc:** Justin L. Leinenweber justin@ilesq.com

Kelly,

Please find attached the Sheriff Defendants' Amended MIDP Disclosures.

Thanks,
Ethan



Ethan E. White
Partner

ewhite@emerylawltd.com
630-984-0339



Winston - CCSO
Amend...res.pdf

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LEGRAIN WINSTON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 18 C 5726 |
| v. | ) | |
| | ) | Hon. Matthew F. Kennelly |
| SHERIFF OF COOK COUNTY THOMAS J. DART, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' *AMENDED* DISCLOSURES**
**PURSUANT TO THE MANDATORY INITIAL DISCOVERY PILOT PROJECT**

Defendants, SHERIFF OF COOK COUNTY THOMAS J. DART, JOSEPH RANZINO, GREGORY SHIELDS, THOMAS NEAL, and, CHRISTOPHER ROHLOFF (collectively, the "Sheriff Defendants"), by and through their undersigned counsel, state as follows as their *Amended Disclosures Pursuant to the Mandatory Initial Discovery Pilot Project*:

1. State the names and, if known, the addresses and telephone numbers of all persons who you believe are likely to have discoverable information relevant to any party's claims or defenses, and provide a fair description of the nature of the information each such person is believed to possess.

**RESPONSE**: The Sheriff Defendants identify the following people likely to have discoverable information relevant to any party's claims or defenses:

a) **Legrain Winston** (contact information known to Plaintiffs) - knowledge regarding the allegations in the Complaint and his alleged damages.

b) **Michelle Strickland** (contact information known to Plaintiffs) - knowledge regarding the allegations in the Complaint and her alleged damages.

c) **Vernell Tims** (contact information known to Plaintiffs) - knowledge regarding the allegations in the Complaint and his alleged damages.

d) **I.V. Newson, Jr.** (contact information known to Plaintiffs) - knowledge regarding the allegations in the Complaint and his alleged damages.

e) **Samuel Page**  (contact information known to Plaintiffs) - knowledge regarding the allegations in the Complaint and his alleged damages.

f) **Wilford Ferguson** (contact information known to Plaintiffs) - knowledge regarding the allegations in the Complaint and his alleged damages.

g) **Cecil Williams** (contact information known to Plaintiffs) - knowledge regarding the allegations in the Complaint and his alleged damages.

h) **Anthony Manning** (contact information known to Plaintiffs) - knowledge regarding the allegations in the Complaint and his alleged damages.

i) **David Walker**  (contact information known to Plaintiffs) - knowledge regarding the allegations in the Complaint and his alleged damages.

j) **Tyrone McGhee** (contact information known to Plaintiffs) - knowledge regarding the allegations in the Complaint and his alleged damages.

k) **Victor Slaughter**  (contact information known to Plaintiffs) - knowledge regarding the allegations in the Complaint and his alleged damages.

l) **Joseph Ranzino** (contact through defense counsel) - knowledge regarding Plaintiffs' job performance, discipline, job scheduling and assignment, and day-to-day interaction with Plaintiffs.

m) **Gregory Shields** (contact through defense counsel) - knowledge regarding Plaintiffs' job performance, discipline, job scheduling and assignment, and day-to-day operation of the EMU.

n) **Thomas Neal** (contact through defense counsel) - knowledge regarding Plaintiffs' job performance, discipline, job scheduling and assignment, and day-to-day interaction with Plaintiffs.

o) **Christopher Rohloff** (contact through defense counsel) - knowledge regarding Plaintiffs' job performance, discipline, job scheduling and assignment, and day-to-day interaction with Plaintiffs.

p) **Barry Ayce** (contact through defense counsel) - knowledge regarding Plaintiffs' job performance, discipline, job scheduling and assignment, and day-to-day interaction with Plaintiffs.

q) **John Webb** (contact through defense counsel) - knowledge regarding Plaintiffs' job performance, discipline, job scheduling and assignment, and day-to-day interaction with Plaintiffs.

r) **Chris Helms** (contact through defense counsel) - knowledge regarding Plaintiffs'

job performance, discipline, job scheduling and assignment, and day-to-day interaction with Plaintiffs.

s) **Johnny O'Malley** (contact through defense counsel) - knowledge regarding Plaintiffs' job performance, discipline, job scheduling and assignment, and day-to-day interaction with Plaintiffs.

t) **Mike Brady** (contact through defense counsel) - knowledge regarding Plaintiffs' job performance, discipline, job scheduling and assignment, and day-to-day interaction with Plaintiffs.

u) **Robert Smith** (contact through defense counsel) - knowledge regarding Plaintiffs' job performance, discipline, job scheduling and assignment, and day-to-day interaction with Plaintiffs.

v) **Cedric Logan** (contact through defense counsel) - knowledge regarding Plaintiffs' job performance, discipline, job scheduling and assignment, and day-to-day interaction with Plaintiffs.

w) Any person disclosed in Plaintiffs' MIDP Disclosures.

x) Investigation continues and the Sheriff Defendants reserve their right to supplement this response as provided for in the MIDP Standing Order.

2. State the names and, if known, the addresses and telephone numbers of all persons who you believe have given written or recorded statements relevant to any party's claims or defenses. Unless you assert a privilege or work product protection against disclosure under applicable law, attach a copy of each such statement if it is in your possession, custody, or control. If not in your possession, custody, or control, state the name and, if known, the address and telephone number of each person who you believe has custody of a copy.

**RESPONSE**: Defendants are not aware of any such statements at this time. Defendants reserve

the right to supplement these disclosures based on further investigation and discovery.

3. List the documents, electronically stored information ("ESI"), tangible things, land, or other property known by you to exist, whether or not in your possession, custody or control, that you believe may be relevant to any party's claims or defenses. To the extent the volume of any such materials makes listing them individually impracticable, you may group similar documents or ESI into categories and describe the specific categories with particularity. Include in your response the names and, if known, the addresses and telephone numbers of the custodians of the documents, ESI, or tangible things, land, or other property that are not in your possession, custody, or control. For documents and tangible things in your possession, custody, or control, you may produce them with your response, or make them available for inspection on the date of the response, instead of listing them. Production of ESI will occur in accordance with paragraph C.2 below.

**RESPONSE**: Plaintiff lists the following documents, ESI, tangible things, land, or other property known to exist, whether or not in his possession, custody or control, that Plaintiff believes may be relevant to any party's claims or defenses:

      a.      Documents concerning EMU operations, scheduling, and staffing.

      b.      Non-privileged communications concerning EMU operations, scheduling, and staffing.

      c.      Attendance sheets for pre-accountability meetings.

      d.      Documents related to the job responsibilities and duties for Plaintiffs.

      e.      Documents and communications related to Plaintiffs' job performance, discipline, and scheduling.

      f.      Personnel files for each of the named Plaintiffs, including disciplinary files.

      g.      The Cook County Sheriff's Employment Action Manual.

      h.      Investigation continues and Defendants reserve their right to supplement this response as provided for in the MIDP Standing Order.

4. For each of your claims or defenses, state the facts relevant to it and the legal theories upon which it is based.

**RESPONSE**: The Sheriff Defendants generally deny Plaintiffs' allegations as reflected in the Sheriff Defendants' Answer and Affirmative Defenses to the Complaint. Defendants further state that any employment actions taken were for or legitimate, non-discriminatory, non-retaliatory, non-pretextual motives and would have been taken regardless of Plaintiff's alleged protected activities or protected status. Employment and staffing decisions were made for operational reasons. Defendants further state that Defendants have failed to identify any adverse employment action to substantiate a damages claim. Finally, Defendants state that they are immune from liability for many of Plaintiffs' claims under the Tort Immunity Act.

5. Provide a computation of each category of damages claimed by you, and a description

of the documents or other evidentiary material on which it is based, including materials bearing on the nature and extent of the injuries suffered. You may produce the documents or other evidentiary materials with your response instead of describing them.

**RESPONSE**: Defendants are not seeking any damages at this time other than those costs permitted pursuant to Fed. R. Civ. P. 54. Investigation continues and Defendants reserve their right to supplement this response as provided for in the MIDP Standing Order.

6. Specifically identify and describe any insurance or other agreement under which an insurance business or other person or entity may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse a party for payments made by the party to satisfy the judgment. You may produce a copy of the agreement with your response instead of describing it.

**RESPONSE**: Not applicable to these Defendants.

RESPECTFULLY SUBMITTED,

SHERIFF OF COOK COUNTY THOMAS J. DART, JOSEPH RANZINO, GREGORY SHIELDS, THOMAS NEAL, and, CHRISTOPHER ROHLOFF

Dated: February 24, 2020

By: /s/ Justin L. Leinenweber
    One of Their Attorneys

Justin L. Leinenweber
Leinenweber Baroni & Daffada, LLC
120 N LaSalle St, Ste 2000
Chicago, IL 60602
(312) 380-6635
justin@ilesq.com

Ethan White
Emery Law, Ltd.
2021 Midwest Road, Suite 200
Oak Brook, IL 60523
(630) 984-0339
ewhite@emerylawltd.com