UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEGRAIN WINSTON, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | No. 18 CV 5726 |
| | ) | |
| v. | ) | |
| | ) | Hon. Judge Matthew F. Kennelly |
| SHERIFF OF COOK COUNTY THOMAS J. DART, in his Official Capacity, et al. | ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RULE 56.1(c)(2) RESPONSE TO
PLAINTIFFS' STATEMENT OF ADDITIONAL FACTS**

The Cook County Sheriff's Office ("CCSO"), Joseph Ranzino, Gregory Shields, Thomas Neal, Christopher Rohloff, and Cook County ("Defendants"), by and through the undersigned counsel, state as follows as their *Rule 56.1(c)(2) Response to Plaintiffs' Statement of Additional Facts*:

1. Plaintiff, I.V. Newson, Jr. began working for the CCSO on or about February 17, 1990, bid for the position as an Investigator in the EM unit in and around 2005 until he retired on or about November 31, 2019. Dkt. 109-1, Ex. A at 15:14-16:11; 17:4-5.

**RESPONSE**: Undisputed.

2. Plaintiff, David Walker began working for the CCSO on or about February 1, 1991, moved to the EM unit as an Investigator on or about November 5, 1992, and has been in that position in EM ever since. Dkt. 109-1, Ex. B at 13:15-16; 15:19-20.

**RESPONSE**: Disputed in part. Walker testified that he was "promoted" to the EM unit, not "moved." Dkt. 109-1, Ex. B at 15:19-20.

3. Plaintiff, Cecil Williams began working for the CCSO in and around 1993, moved to the EM unit as an Investigator in and around 2005 and has been in that position there ever since. Dkt. 109-1, Ex. C at 16:1-3; 19:2-7.

**RESPONSE**: Disputed in part. Williams testified that he went through a "bidding procedure" to join the EM unit, not that he was "moved." Dkt. 109-1, Ex. C at 19:11-20:5.

4. Plaintiff, Samuel Page has a Bachelor's Degree in Science from Lewis University, began working for the CCSO in and around 1986, moved to the EM unit as an Investigator in and around 1992 until he retired on or about September 1, 2018. Dkt. 109-1, Ex. D at 12:10-13; 13:2-4; 15:15-18; 15:22-24.

**RESPONSE**: Undisputed.

5. Plaintiff, Victor Slaughter began working for the CCSO in and around April 1997, moved to the EM unit as an Investigator in and around 2006, and has been in that position there ever since. Dkt. 109-1, Ex. E at 10:14-16; 11:2.

**RESPONSE**: Disputed in part. Slaughter testified he went to the EM unit in 2005, not 2006. Dkt. 109-1, Ex. E at 11:2.

6. Plaintiff, Michelle Strickland has a Master's Degree of Science from Chicago State University, began working at CCSO in and around June 2005, and moved to the EM unit in and around March 2014 until she transferred out of EM to transportation in and around April 2015. Dkt. 109-1, Ex. F at 11:1-3; 14:24-15:2; 17:12-14; 17:19-21.

**RESPONSE**: Undisputed.

7. Plaintiff, Tyrone McGhee began working at CCSO on or about October 31, 1994, moved to the EM Unit as an Investigator in and around 2002, and has been in that position there ever since. Dkt. 109-1, Ex. G at 8:18-20; 10:4-6.

**RESPONSE**: Undisputed.

8. Plaintiff, LeGrain Winston began working for CCSO on or about January 25, 1991, moved to the EM unit as an Investigator in and around 1994 and has been in that position there ever since. Dkt. 109-1, Ex. I at 13:16-20; 15:1-3.

**RESPONSE**: Disputed in part. Winston testified that he applied and was accepted into the EM unit, not that he was "moved." Dkt. 109-1, Ex. I at 16:5-8.

9. Plaintiff, Wilford Ferguson began working for CCSO on or about April 16, 1991, moved to the EM unit as an Investigator on or about December 27, 1992 and has been in that position there ever since. Dkt. 109-1, Ex. J at 13:3-6; 16:21-23.

**RESPONSE**: Undisputed.

10. Defendant, Gregory Shields graduated from high school and began working for CCSO in and around 1989 as a deputy sheriff; was transferred to the EM unit in and around 1992; promoted to Deputy Chief; he never tested and never applied for the position, nor expressed interest in becoming a Deputy Chief; promoted to Chief in and around 2004-2005 and never applied or tested for position; promoted to Director in and around 2006; promoted to Executive Director in and around 2016 and never tested or applied for the position; and, finally bypassed the Deputy Executive Director position when promoted to Executive Director. Dkt. 109-1, Ex. H at 36:17-21; 199-200; 50:18-52; 84:16-19; 94-95; 96:6-12; 97:1-13; 97:19-99; 103:3-8.

**RESPONSE**: Disputed in part – the cited testimony does not fully support this fact. Shields testified that he was promoted to Deputy Chief and that he did not remember the process. Dkt. 109-1, Ex. H 84:13-15. Plaintiffs did not ask Shields whether he was tested or applied for that position. Likewise, Shields testified that he was promoted to Chief (*id.* at 94:14-16), but Plaintiffs did not ask whether he tested or applied for that position. Shields testified that his title changed to Director in 2006, but Plaintiffs did not ask if it was a promotion. *Id.* at 96:1-8. Finally, Shields testified that his position changed to Executive Director (*id.* at 97:3-16), but Plaintiffs did not ask whether he tested or applied for that position.

11. Defendant, Joseph Ranzino received a GED and an Associate's Degree from Triton Junior College; was promoted to Deputy Chief in and around 2001-2002; was promoted to Chief in and around 2004; and, was laid off by the Sheriff's Department on or about December 4, 2017. Dkt. 109-1, Ex. K at 10:1-3; 11:5; 27:15-19; 31:2; Ranzino's Answers to Plaintiffs' First Set of Interrogatories attached hereto as Exhibit "3"

**RESPONSE**: Disputed in part – the cited testimony does not fully support this fact. Ranzino testified that he became an "acting chief" in 2004, not that he was promoted to Chief. Dkt. 109-1, Ex. K at 30:24-31:3.

12. Defendant, Christopher Rohloff graduated high school and was promoted to supervisor in EM unit after working there for approximately two or three years; he never took a test and was asked by a supervisor if he wanted a promotion; in and around 2006, Rohloff was appointed to Deputy Chief and he never tested for the position. Dkt. 109-1, Ex. N at 22:7-16; 22; 25:21-27:14; Rohloff's Answer to Plaintiffs' First Set of Interrogatories attached hereto as Exhibit "6".

3

**RESPONSE**: Disputed in part – the cited testimony does not fully support this fact. Rohloff testified, in regards to becoming a supervisor, that he was "fairly positive that [he] did have to write some sort of document" but did not "recall the semantics of how it worked." Dkt. 109-1, Ex. N at 23:10-24:7. Rohloff further testified that his position changed to "acting deputy chief," not that he was appointed to Deputy Chief, and that he had "the responsibilities and the credentials of a deputy chief without the salary." *Id.* at 25:24-26:6. Plaintiffs did not ask Rohloff whether he applied or tested for the position.

13. Defendant, Thomas Neal began working for the CCSO EM Unit in and around 1989, was promoted to Chief of EM and promoted to Chief of Patrol without testing for either positions. Dkt. 109-1, Ex. O at 12:16-17; 20:24-21:8; 30:13-15.

**RESPONSE**: Disputed in part – the cited testimony does not fully support this fact. Neal testified that he was "acting chief" and later Chief of Patrol but Plaintiffs did not ask him whether he tested for either position. Dkt. 109-1, Ex. O at 28:7-8, 30:6-15.

14. Defendant, Sheriff Dart reveals that he is the Defendant in the Northern District of Illinois in over 1,327 cases. Def. Dart's Answer to Plaintiffs' First Set of Interrogatories attached hereto as Exhibit "2".

**RESPONSE**: Defendants object as the alleged fact is immaterial for purposes of summary judgment as it does not affect the outcome of any parties' claim or defense. Further, this fact is disputed. Defendant Sheriff Dart's Answer to Plaintiffs' Interrogatory No. 5 states, "a recent search of the Northern District of Illinois's Electronic Court Filing System for 'Thomas Dart' reveals that there are 265 separate entries for a party named 'Thomas Dart.' Selecting the first entry for Defendant SHERIFF DART reveals that he is a defendant in 1327 cases, and the other entries contain hundreds to thousands of additional cases." SOAF Ex. 2 at Interrog. 5.

15. Plaintiffs requested all documents related to the various job duties for Investigators in EM; Defendants have not produced any documents responsive to this request.

4

Defendants' Response to Request for Production, attached hereto as Exhibit "4". See also, Dkt. 109-1, Ex. S at ¶¶ 5, 6, 7.

**RESPONSE**: Defendants object as the alleged fact is immaterial for purposes of summary judgment as it does not affect the outcome of any parties' claim or defense. Further, this fact is disputed. Plaintiffs' Request No. 14 sought "[a]ny and all documents that relate or pertain to the work duties and/or responsibilities of the following positions: a. Investigator with Electronic Monitoring Unit…" Defendants responded that they "have produced or will produce all non-privileged responsive documents in Defendants' possession and as identified by searches based on the parties agreed upon search terms." Defendants produced nearly 23,000 pages of documents based on the parties agreed upon search terms. Plaintiffs cite to no record evidence that they filed a motion to compel, demanded documents, or even sought a Local Rule 37.2 meet and confer with Defendants regarding *any* discovery matters, let alone allegedly missing documents.

16. Defendant, Thomas Neal filed an EEOC case against CCSO regarding his compensation and based on racial discrimination. Defendant Neal's Answer to Plaintiffs' First Set of Interrogatories attached hereto as Exhibit "5".

**RESPONSE**: Defendants object as the alleged fact is immaterial for purposes of summary judgment as it does not affect the outcome of any parties' claim or defense. Further, this fact is disputed in part. The cited exhibit states only, in response to Plaintiffs' Interrogatory No. 8, that Neal "previously had a worker's compensation case against the CCSO, as well as an EEOC case regarding his compensation, and has filed for bankruptcy on three occasions. None of those cases are currently pending." The cited exhibit makes no mention of racial discrimination.

17. Brady testified that he physically removed Defendant Shields from a confrontation with Plaintiff Winston and told Defendant Shields to calm down, relax and that he should not conduct business that way. Dkt. 109-1, Ex. P at 21:17-21; 22:1-5; 15-17; 25:13-17.

**RESPONSE**: Disputed in part. Brady did not testify that he physically removed Shields from a confrontation with Winston. Brady testified that "Director Shields and Officer Winston were loudly talking to each other about a situation that I didn't have any information about, and I said -- they went back and forth with each other. No racial tones, no sexual tones, no threats, and then I tried to just calm it down and ask what was going on." Dkt. 109-1, Ex. P at 21:9-15. When asked if he put his hands on Shields, Brady answered "No." *Id.* at 21:22-22:1. When asked if he grabbed Shields arm, Brady answered "A. I don't think I grabbed him by the arm. It could be a light ushering or, come on, let's go, let's just walk in here." *Id.* at 22:12-17.

18. Defendant Neal testified that Plaintiffs were knowledgeable on the job and were "damn good workers." Dkt. 109-1, Ex. O at 65:20-66:11.

**RESPONSE**: Disputed in part. Neal was asked about only some of the Plaintiffs, namely "Cecil Williams, …David Walker, Tyrone McGhee, Victor Slaughter," to which he responded "I would say each and every one of them including Winston and Williams his partner were damn good investigators when they did their job." Dkt. 109-1, Ex. O at 65:20-66:5 (emphasis added).

19. Defendant Rohloff testified that of all the Plaintiffs that worked for him; they were all good employees. Dkt. 109-1, Ex. N at 44:6-8; 52-53:1; 56:17-19; 57-58; 60.

**RESPONSE**: Disputed in part. At the cited testimony, Rohloff only referred to six of the remaining ten Plaintiffs as being good employees: Winston (Dkt. 109-1, Ex. N at 44:6-8), Tims (*id.* at 52:3-53:1), Page (*id.* at 56:17-19), Ferguson (*id.* at 57:14-19), Walker (*id.* at 58:22-24), and McGhee (*id.* at 60:8-10).

20. Defendant Rohloff testified that Defendant Shields was a difficult employee. Dkt. 109-1, Ex. N at 66.

**RESPONSE**: Defendants object as the alleged fact is immaterial for purposes of summary judgment as it does not affect the outcome of any parties' claim or defense. Further, this fact is

6

disputed. Rohloff testified that "[a]t that juncture," Shields was difficult as a supervisor, not as an employee. Dkt. 109-1, Ex. N at 65:23-66:2.

21. Plaintiffs qualified for all assignments in EM. Dkt. 109-1, Ex. K at 60:12-61:8.

**RESPONSE**: Disputed in part. The cited testimony is specific to Ranzino's belief, and his belief alone, that Plaintiffs' were qualified for all positions.

22. Defendant Rohloff was given a reprimand for failing to shave per department policy; he did not consider this violation serious and believed it should not result in discipline. Dkt. 109-1, Ex. N at 12-15.

**RESPONSE**: Disputed as the cited testimony, Ex. N at 12-15, has no mention of any shaving violation or discipline.

23. Defendant Shields was never disciplined for a sustained finding regarding the incident where he yelled at Plaintiff Winston and Brady had to physically pull him away. Dkt. 109-1, Ex. H at 211:11-212.

**RESPONSE**: Defendants object as the alleged fact is immaterial for purposes of summary judgment as it does not affect the outcome of any parties' claim or defense. Further, this fact is disputed. When Plaintiffs asked Shields, regarding that incident, "And you didn't suffer any discipline as a result of that sustained finding [regarding the Winston incident], correct?" he responded, "I don't remember. I honestly don't remember." Dkt. 109-1, Ex. H at 213:1-4. Further disputed as Brady did not testify that he physically removed Shields from a confrontation with Winston. Brady testified that "Director Shields and Officer Winston were loudly talking to each other about a situation that I didn't have any information about, and I said -- they went back and forth with each other. No racial tones, no sexual tones, no threats, and then I tried to just calm it down and ask what was going on." Dkt. 109-1, Ex. P at 21:9-15. When asked if he put his hands on Shields, Brady answered "No." *Id.* at 21:22-22:1. When asked if he grabbed Shields

7

arm, Brady answered "A. I don't think I grabbed him by the arm. It could be a light ushering or, come on, let's go, let's just walk in here." *Id.* at 22:12-17.

24. No non-African-American officer was ever given a 5-day suspension for an improper search. Dkt. 109-1, Ex. H at 228.

**RESPONSE**: Disputed. When Shields alone was asked if he was "aware of any non-African-American investigators within [the EM] unit that received a five-day suspension for missing a weapon in a search," Shields responded that "No, I don't have an example. <u>I mean, I don't remember</u>. I don't have any thoughts on that, a nonAfrican-American bringing in a weapon who didn't receive discipline. No, I don't have any examples." Dkt. 109-1, Ex. H at 228:4-21. Further disputed as the Plaintiff at issue, Strickland, did not receive a five-day suspension as Shields reduced it "to nothing, to zero" *Id.* at 224:3-5, 226:17-227:6.

25. Defendant Shields admitted there was no CCSO policy on discrimination; and, admitted there was no training on harassment and discrimination. Dkt. 109-1, Ex. H at 181:15-22; 191:2-12; 196-197; 205:18-206:13; 208:4-209:5; 287:21-288:6.

**RESPONSE**: Disputed. Shields does not admit in any of the cited testimony that there was no CCSO policy on discrimination. Nor did he admit that there was no training on harassment and discrimination. More specifically, at 181:15-22, Shields testified that he was sure the policy included language that a supervisor should treat all employee fairly. At 191:2-12, there is no testimony regarding any policy or training at all. Likewise, at 196-197, there is no testimony regarding any policy or training. At pages 205:18-206:13, Shields testified only regarding assignment policy, not discrimination. At pages 208:4-209:5, Shields testified as to language in a collective bargaining agreement ("CBA"), not the CCSO's policies or training. Finally, at pages 287:21-288:6, Shields testified specifically that training to prevent harassment actually existed..

26. Defendant Neal testified that he did not agree with Defendant Ranzino's management style. Dkt. 109-1, Ex. O at 57:1-5.

8

**RESPONSE**: Defendants object as the alleged fact is immaterial for purposes of summary judgment as it does not affect the outcome of any parties' claim or defense. Further, this fact is disputed. Neal testified that he did not "prefer" Ranzino's style of management, not that he disagreed with it. Dkt. 109-1, Ex. O at 57:10-15.

27. Defendant Neal testified that while at work, he told Plaintiff Winston that his family members were "crooks". Dkt. 109-1, Ex. O at 66:1-20; 98:1-4.

**RESPONSE**: Defendants object as the alleged fact is immaterial for purposes of summary judgment as it does not affect the outcome of any parties' claim or defense. Further, this fact is disputed. In full, Neal testified not that he specifically called Winston a crook, but rather that he told Winston "you guys are a bunch of crooks, because of the illegal activity that I had considered turning over to OPR, but the defendant in it did not want to take it any further." Dkt. 109-1, Ex. O at 98:3-7. Neal testified further that "Winston's sister was dating investigator Cook and they were buying houses and putting them in [Investigator] Cook's name because Cook had probably an 800 credit score. It turns out they took money out and Cook got left with the bill. He ended up having to file a bankruptcy." *Id.* at 98:10-16. Finally, when asked who he was referring to as a "bunch of crooks," Neal clarified that it was "[w]hoever did the house deal," which meant Winston's sister. *Id.* at 102:9-103:8.

28. Defendant Neal testified that he filed an EEOC charge alleging that he was being discriminated against because he was African-American. Dkt. 109-1, Ex. O at 73:15-74:10.

**RESPONSE**: Undisputed.

29. Defendant Neal testified that he was wrongly accused of an inventory issue which was the responsibility of the other Caucasian supervisors, who were never accused of wrongdoing. Dkt. 109-1, Ex. O at 93-94.

**RESPONSE**: Defendants object as the alleged fact is immaterial for purposes of summary judgment as it does not affect the outcome of any parties' claim or defense. Further, this fact is

9

disputed in part. Nowhere in the cited portion did Neal testify that the inventory issue was the responsibility of other Caucasian supervisors, who were never accused of wrongdoing.

30. Defendant Neal prevented Plaintiff Winston from exercising his right to file a complaint with OPR against Defendant Shields for the confrontation which occurred outside of Shield's office wherein Brady had to physically removed Shields. Dkt. 109-1, Ex. O at 75:8-19; 114:13-115:18.

**RESPONSE**: Defendants object as the alleged fact is immaterial for purposes of summary judgment as it does not affect the outcome of any parties' claim or defense. Further, this fact is disputed. The cited testimony does not support this fact. At the cited portion, when Neal was asked whether Winston made a complaint against him, Neal responded, "Not to my knowledge." Dkt. 109-1, Ex. O at 75:8-11. Neal further testified that he knew nothing about a "fight" between Shields and Winston. *Id.* at 114:8-12. Further disputed as Brady did not testify that he physically removed Shields from a confrontation with Winston. Brady testified that "Director Shields and Officer Winston were loudly talking to each other about a situation that I didn't have any information about, and I said -- they went back and forth with each other. No racial tones, no sexual tones, no threats, and then I tried to just calm it down and ask what was going on." Dkt. 109-1, Ex. P at 21:9-15. When asked if he put his hands on Shields, Brady answered "No." *Id.* at 21:22-22:1. When asked if he grabbed Shields arm, Brady answered "A. I don't think I grabbed him by the arm. It could be a light ushering or, come on, let's go, let's just walk in here." *Id.* at 22:12-17.

31. Defendant Shields filed a fictional complaint against Plaintiffs Winston and Ferguson alleging they improperly used court time in lieu of their tour of duty; and Defendant Neal was a co-complainant on the same complaint. Dkt. 109-1, Ex. H at 218:6-218:13.

**RESPONSE**: Disputed. There is no record evidence that the complaint was "fictional." Further disputed as the cited testimony says nothing about a complaint Shields filed or Neal being a co-complainant.

10

32. Defendant Neal testified that he had never seen the document identifying him as the complainant in the complaint against Plaintiffs Winston and Ferguson regarding the court time in lieu of their tour of duty, which is the case that both Plaintiffs Winston and Ferguson have been pending termination before the Sheriff's Merit Board as a result. Dkt. 109-1, Ex. O at 124:17-125:8.

**RESPONSE**: Defendants object as the alleged fact is immaterial for purposes of summary judgment as it does not affect the outcome of any parties' claim or defense. Further, this fact is disputed. Neal was shown an unsigned copy of his complaint register in his deposition (Dkt. 109-1, Ex. O at 124:3-15), and he was not questioned as to whether he signed the same complaint register that Plaintiffs now attach to the Local Rule 56.1(b)(3)(C) Statement of Additional Facts as Exhibit 7. Plaintiffs' Exhibit 7 indicates it is a complaint register by Thomas Neal and the final page of the document reflects it was signed before a notary by Thomas Neal on 8/13/15.

33. Defendant Shields admitted that he knew about the EEOC charges filed against him by Plaintiff Winston prior to charges seeking Winston's termination were filed. Dkt. 109-1, Ex. L at 9-10.

**RESPONSE**: Disputed. In the cited portion, Shields testified that he was "not sure when [he] became aware of [the EEOC complaints.]" Dkt. 109-1, Ex. L at 9:8-10:17. Plaintiff's counsel made clear he was "not asking when" Shields became aware. *Id.* at 9:13-15. Thus, the cited portion cannot support the purported fact that Shields knew about the EEOC charges filed against him by Plaintiff Winston prior to charges seeking Winston's termination.

34. Defendant Shields knew Plaintiff Winston filed an OPR complaint against Shields before Shields contacted OPR about the complaint against Plaintiffs Winston and Ferguson, which resulted in termination charges being filed against Plaintiffs Winston and Ferguson. Dkt. 109-1, Ex. L at 28-31.

**RESPONSE**: Disputed. The cited portion of Shields testimony has no mention of Shields knowledge of the timing of his or Winston's OPR complaints, or termination charges being filed against Winston or Ferguson, and instead focuses of Shields being interviewed for "sitting on the second step of the grievance process." Dkt. 109-1, Ex. L at 28:14-22, 30:1-11.

11

35. Defendant Shields filed a complaint register against Plaintiffs Winston and Ferguson (African-Americans) on or about August 13, 2015 alleging they improperly used court time in lieu of their tour of duty on July 29, 2015. See Complaint Register attached hereto as Exhibit "7".

**RESPONSE**: Disputed. Exhibit 7 indicates it is a complaint register by Thomas Neal and the final page of the document reflects it was signed before a notary by Thomas Neal on 8/13/15. There is no indication it is a register Shields filed.

36. Defendant Shields filed a complaint register against Investigator Brian Shedor (Caucasian) on or about December 8, 2016 alleging he improperly used court time in lieu of his tour of duty on July 29, 2015. See Complaint Register attached hereto as Exhibit "8".

**RESPONSE**: Undisputed.

37. Defendant Shield's Complaint Register filed on December 8, 2016 against Investigator Shedor (Caucasian) was filed approximately six (6) months after Plaintiff Winston filed his EEOC charge of discrimination on or about July 25, 2016.

**RESPONSE**: Objection as this fact does not cite to any record evidence and thus Defendants cannot properly evaluate whether it disputed or undisputed. Local Rule 56.1(d)(2) requires that each of Plaintiffs' additional facts "must be supported by citation to the specific evidentiary material, including the specific page number, that supports it." The "court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

***

| | |
|---|---|
| Dated: March 19, 2021 | SHERIFF OF COOK COUNTY THOMAS J. DART, in his official capacity, JOSEPH RANZINO, GREGORY SHIELDS, THOMAS NEAL, and CHRISTOPHER ROHLOFF, individually and in their official capacities, and COUNTY OF COOK, ILLINOIS |

By: /s/ Justin L. Leinenweber
**LEINENWEBER BARONI & DAFFADA LLC**
120 North LaSalle Street, Suite 2000
Chicago, Illinois 60602
(866) 786-3705
justin@ilesq.com

*Special State's Attorney for Defendants*

By: /s/ Ethan E. White
**EMERY LAW, LTD.**
2021 Midwest Road, Suite 200
Oak Brook, Illinois 60523
(630) 984-0339 (direct)
ewhite@emerylawltd.com

*Special State's Attorney for Defendants*