UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEGRAIN WINSTON, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | No. 18-cv-05726 |
| | ) | |
| v. | ) | |
| | ) | Hon. Judge Matthew F. Kennelly |
| SHERIFF OF COOK COUNTY THOMAS J. DART, in his Official Capacity, et al. | ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT SHIELDS MOTION FOR
RECONSIDERATION AS TO PLAINTIFF MICHELLE STRICKLAND**

Defendant Gregory Shields, by and through his undersigned counsel, state as follows as his *Motion for Reconsideration as to Plaintiff Michelle Strickland*:

**BACKGROUND FACTS**

On June 24, 2021, the Court largely granted Defendants' Motion for Summary Judgment, denying it only as to two Plaintiffs (Winston and Strickland) and two Counts (Count I - 42 U.S.C. §§ 1981/1983 racial discrimination and Count III – Title VII Hostile Work Environment) against only two remaining individual defendants, Shields and Ranzino. *See* [Dkt. #119] at 31. As to Plaintiff Strickland specifically, the Court held:

> a reasonable jury could find comments toward Winston and Strickland—including Ranzino's use of the N-word, statement that the African- American investigators all look alike, and reference to African-American investigators as 'boy' or 'boys,' as well as Shields's use of 'nappy-headed' to describe Strickland's hair **in front of her and other investigators**—to amount to harassment based on race, thereby satisfying the first two elements of a hostile work environment claim.

*Id.* at 22-23 (emphasis added). The Court further noted that "[t]he record evidence of racial harassment faced by Strickland appears to exclusively concern Shields's racist comment about her

hair. There is no other evidence of racial harassment toward her on the part of Shields or anyone else," and thus any alleged racial comments from Ranzino do not apply to her. *Id.* at 24.

Thus, it appears the Court held that Strickland can maintain her Counts I and III based solely on the fact that Defendant Shields is alleged to have used the term "nappy-headed" to describe Strickland's hair in front of her and other investigators. Shields brings this Motion to clarify that there is no record evidence that he (or any other Defendant) described Strickland's hair as "nappy-headed" in her presence and respectfully ask this Court to reconsider its decision as to Strickland only, as with that single, secondhanded remark, there is insufficient evidence for her to maintain either her Count I or Count III.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 60(b) allows the Court to relieve a party from an Order for, among other things, "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1); *see also Eskridge v. Cook County*, 577 F.3d 806, 809 (7th Cir. 2009). A "mistake" under Rule 60(b)(1) that might justify relief typically involves a misunderstanding of the surrounding facts and circumstances." *Eskridge*, 577 F.3d at 809; *see also Mendez v. Republic Bank*, 725 F.3d 651, 660-61 (7th Cir. 2013) (Rule 60(b)(1) available in District Court's discretion to correct oversight). Defendant Shields contends that this presents one such case where, among the substantial number of parties and testimony, the fact that Strickland never heard any Defendant use the term "nappy-headed" was overlooked.

## **ARGUMENT**

As the Court held in relying on *Gates v. Bd. of Educ. of Chi.*, the Seventh Circuit instructs that "a supervisor's use of racially toxic language in the workplace [is] much more serious than a co-worker's." [Dkt. #119] at 22, citing 916 F.3d 631, 638 (7th Cir. 2019). The *Gates* court was

2

clear, however, that there is a distinction between a plaintiff hearing racially toxic language from a supervisor <u>firsthand</u> versus secondhand. *Gates*, 916 F.3d at 638. In similar fashion, the court in *Dandy v. United Parcel Service, Inc.* rejected that plaintiff's hostile work environment claim where that plaintiff only learned of the supervisors' highly offensive racist comments secondhand. *Dandy*, 388 F.3d 263, 271 (7th Cir. 2004). More specifically, the Court held that:

> …in determining whether remarks "objectively" create a hostile work environment we must assess the <u>frequency of their use, as well as whether the remarks were stated directly to the plaintiff or whether the plaintiff heard them secondhand</u>. That is not to say that racial epithets must be stated directly to a plaintiff to create an objectively hostile work environment. Repeated use of such highly offensive terms in the work environment…may create an objectively hostile work environment, even if they are heard secondhand. Here, however, it is undisputed that the remarks were made in 1992 and 1993, over ten years ago, were stated once, and <u>were not heard directly by the plaintiff</u>. This analysis would be markedly different if Dandy were able to show that these highly offensive comments were made more than once, or able to show that the sentiments which underlie the comments pervaded the work environment … Under these circumstances, even though we are deeply troubled by the allegation that the comments came from senior management, precedent does not permit a finding that Dandy's work environment was made objectively hostile.

*Id*. at 271 (internal citations omitted) (emphasis added). Here the Court, in denying summary judgment as to Strickland's Counts I and III, premised its ruling solely on Shields's singular use of "nappy-headed" allegedly towards and in the presence of Strickland. As explained below, however, and much like the plaintiff in *Dandy*, there is no evidence Strickland ever heard Defendant Shields (or any other Defendant) use that term firsthand, a distinction Defendants respectfully suggest may have been overlooked within the voluminous record.

More specifically, the Court pointed to "Shields's use of 'nappy-headed' to describe Strickland's hair **in front of her and other investigators**…satisfying the first two elements of a hostile work environment claim." [Dkt. #119] at 22-23 (emphasis added). Yet as Defendants

3

pointed out in there *Reply in Support of their Motion for Summary Judgment*, a review of Plaintiffs' improper string cites reveals that only Plaintiff Winston ever testified to personally hearing the term "nappy head." [Dkt. #117] at 8, n.8. This is further supported by Strickland's direct testimony, where she repeatedly admitted she never heard Shields use the offending term personally. *See, e.g.*, Strickland Dep. at 51:5-22 ("Only one time I was made aware of it …I did not hear it when we were standing there having a conversation… I did not hear him say it. I had walked off; I was no longer in earshot, but the other investigators that were standing there heard him say it."). There is no record evidence Shields, or any other Defendant, used that term more than once.

Thus, while it appears the Court based its analysis on the fact Strickland heard the one-time comment personally, the record makes clear she only learned of it secondhand, a distinction both *Gates* and *Dandy* emphasize must be part of the analysis. Defendants submit that, much like the plaintiff in *Dandy*, Strickland's only arguably admissible evidence in support of her Counts I and III is a single, secondhand use of the term "nappy head." Under Seventh Circuit precedent, that is insufficient to support either a Title VII hostile work environment claim or a 1981/1983 claim of racial discrimination (*Dandy*, 388 F.3d at 271), and Defendant Shields believes that, upon a re-examination of the firsthand versus secondhand distinction, the Court should enter judgment against Strickland on all remaining Counts.

Dated: July 13, 2021            GREGORY SHIELDS, individually and in his official capacity

By: /s/ Justin L. Leinenweber
**LEINENWEBER BARONI & DAFFADA LLC**
120 North LaSalle Street, Suite 2000
Chicago, Illinois 60602
(866) 786-3705
justin@ilesq.com

4

5

*Special State's Attorney for Defendants*

By: <u>/s/ Ethan E. White</u>
**EMERY LAW, LTD.**
2021 Midwest Road, Suite 200
Oak Brook, Illinois 60523
(630) 984-0339 (direct)
ewhite@emerylawltd.com

*Special State's Attorney for Defendants*

## **CERTIFICATE OF SERVICE**

      I, the undersigned, being first duly sworn upon oath, depose, and say that I caused to be served the foregoing document by electronically filing the same with the Clerk for the U.S. District Court for the Northern District of Illinois, Eastern Division, a copy of which was then forwarded to each attorney of record by CM/ECF on July 13, 2021.

                                                  RESPECTFULLY SUBMITTED,

Dated: July 13, 2021                            By: /s/ Ethan E. White

**EMERY LAW, LTD.**
Ethan E. White
2021 Midwest Road, Suite 200
Oak Brook, IL 60523
(630) 984-0339 (direct)
ewhite@emerylawltd.com