UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEGRAIN WINSTON, et al., | ) |
| Plaintiffs, | ) Case No. 18-cv-05726 |
| v. | ) Honorable Judge Matthew F. Kennelly |
| SHERIFF OF COOK COUNTY THOMAS J. DART, in his Official Capacity, et al., | ) |
| Defendants. | ) |

**PLAINTIFF MICHELLE STRICKLAND'S RESPONSE TO
DEFENDANT SHIELDS' MOTION FOR RECONSIDERATION**

Plaintiff, Michelle Strickland, by and through her attorneys, The Herbert Law Firm, in response to Defendant Shields' Motion for Reconsideration, states as follows:

**LEGAL STANDARD**

Federal Rule of Civil Procedure 60(b)(1) provides that, "on motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for … mistake, inadvertence, surprise or excusable neglect." Fed. R. Civ. P. 60(b)(1). Relief under this rule is an extraordinary remedy granted only in exceptional circumstances. *Nelson v. Napolitano*, 657 F.3d 586, 589 (7th Cir. 2011); *Harold Washington Party v. Cook Cnty,, Ill. Democratic Party*, 984 F.2d 875, 879 (7th Cir. 1993). Defendant Shields offers only one basis for Rule 60(b)(1) consideration by this Court.

**ARGUMENT**

In its motion, Defendant Shields asks this Court to reconsider its decision denying summary judgment on Strickland's Count I and III because Shields' comment referring to

1

Strickland as "nappy-headed" was not made directly to Strickland and therefore the secondhanded remark was insufficient. **[Doc. 121 p. 2]**, *Def Motion For Reconsideration.* Defendant's argument is entirely based on a distinction without a difference. The fact that Strickland did not hear the comment directly is of no significance based on the facts here.

      Describing an African-American female as "nappy-headed" is an unambiguous racial epithet which falls on the more severe end of the spectrum. *Cerros v. Steel Technologies Inc*. 288 F.3d 1040 (7th Cir. 2005). The term "nappy" was used by the slave traders in the Americas in the 17th century to describe the hair texture of the Africans they brought in bondage to the U.S. to be sold, bought, and owned as property of White men. A number of courts recognized that the targeting of African-American employees with language that historically was used to subjugate African-Americans is frequently severe or pervasive. The 7th Circuit held that, "No single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet…by a supervisor ***in the presence of his subordinates.*** *Rodgers v. Western-Southern Life Ins. Co*. 12 F.3d 668 (7th Cir 1993), (emphasis added). In *Rodgers*, the term used was the "N-word"; however the term used by Shields is no less offensive as it establishes a pure anathema to African-Americans. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179 (4th Cir.2001). One of the cases relied upon by Defendant Shields held that, "A supervisor's use of racially toxic language in the workplace as much more serious than a co-workers." *Gates v. Board of Education* 916 F.3d 631 (7th Cir. 2019), quoting *Robinson v. Perales*, 894 F.3d 818 (7th Cir. 2018). Shields was a high-ranking supervisor in the EM unit when he referred to Strickland as "nappy-headed" during a roll call with all of her co-workers present. **[Doc.110, ex. I]** Winston dep at 266. The comment was made as Strickland was walking out of the roll call room. **[Doc. 110, ex. F]** Strickland dep at 51. Strickland was made aware of

Shields' disparaging remark shortly after it was made and heard by the entire watch. What is more, because the comment was so repulsive and made by a high-level supervisor, it became a pervasive example of the racial hostility toward African-Americans in the EM unit. Shields racial epithet toward Strickland was "on-going" and something that was consistently "laughed" and "mocked" about. *Id.* at 52-56. Strickland became known in the unit as the girl Shields called the "nappy-head." *Id.* at 154. In a case on point, the 7th Circuit Court of Appeals found it significant that the racial comment was well-known throughout the workplace in reversing summary judgment on a claim of hostile work environment. *Johnson v. Advocate Health and Hospitals Corp*. 892 F.3d 887 (7th Cir 2018). The slur made by Shields would have been much less offensive if made directly to Strickland, and not in the presence of her co-workers. The roll call setting provided the fuel to propel the lore of Strickland as the "nappy-headed" girl. There was never a doubt that the slur would get back to Strickland and stick with her for the duration of her career. As the director of the unit, Shields knew this better than anyone.

Moreover, the record in this case demonstrates that Strickland was subjected to much more than just *one* isolated racial epithet. Strickland heard supervisors, including Shields, repeatedly use racially discriminatory language directed to and in the presence of herself and other African-American employees. Shields used the "N word" in front of Strickland. *Id. at*.40. She consistently heard supervisors refer to blacks as "all looking alike", and Shields referring to blacks as "you all." *Id.* at 35-38; 57. It is an uncontested fact that Shields and other supervisors used the N word and referred to black employees as "you people" in the workplace. See **[Doc. 114]** at 28; **[Doc.110, ex. J]** Ferguson dep at.p.146; see also [**Doc.110 ex. B**] Walker dep at pg.90-92; **[Doc.110, ex. G]** McGhee dep at 40-43; see also **[Doc.114]** at 33, 38, 39, 41, 51.

3

Indeed, with respect to some of the unambiguous racial epithets made by Defendant's agents one utterance was more than enough to alter Plaintiffs' conditions of employment and create an abusive working environment. These comments were generalized about a class of employees based solely on their race, which the courts have held is actionable. As the 7th Circuit Court of Appeals noted in *Rodgers*, Title VII does not permit supervisors (like Shields) to use this type of blanket criticism of a racially-defined class of employees. "Evidence that the same supervisors made racially derogatory statements comments to other employees in the same positions is certainly relevant evidence tending to make it more likely that the discrimination was pervasive." *Johnson v. Advocate Health and Hospitals Corp*. 892 F.3d 887, 902 (7th Cir 2018)

What is more, Strickland identified specific examples of how she was treated differently than her white co-workers. She was repeatedly referred to as a "secretary" by her supervisors. **[Doc. 110, ex. F]** Strickland dep at. 114, 126. She was threatened with demotion back to the jail. *Id*. at 128. Shields disproportionately disciplined Strickland and used discipline to control Strickland and restrict her ability to advance in the office. *Id*. at 129, 133, 176, 179-181. Even discipline which had been reduced was never conveyed to Strickland as a further means of control. *Id*. at 174-177, 188.

The abuse was so severe that Strickland sought therapy to deal with the abuse. *Id*. at 155, 171. Things got so bad that Strickland took a demotion to get out of the abusive environment. *Id*. at 188, 190-191. Thus, Strickland has not only identified and described several *material* facts as to which genuine issues exist, but she has also set forth admissible evidence that gives rise to more than just "a single, secondhand use of the term 'nappy-head.'" **[Doc. 121]**, Def. motion at 4.

4852-3596-9523, v. 1

Defendant Shields asks this Court to agree that referring to a subordinate black female as "nappy-headed" is insufficient evidence to support a hostile work environment claim. This is the argument of a white male who has lived a charmed life and achieved significant advancement in his career with the sheriff. Shield never applied for promotions **[Dkt. 109-1, Ex. I]** at 183:9-16; 185: 3-16; 214:13-215:1; 272:16-21; 273:3-8; 283:6-10; 287:14-19. Defendant, Gregory Shields graduated from high school and began working for CCSO in and around 1989 as a deputy sheriff; was transferred to the EM unit in and around 1992; promoted to Deputy Chief; he never tested and never applied for the position, nor expressed interest in becoming a Deputy Chief; promoted to Chief in and around 2004-2005 and never applied or tested for position; promoted to Director in and around 2006; promoted to Executive Director in and around 2016 and never tested or applied for the position; and, finally bypassed the Deputy Executive Director position when promoted to Executive Director. **[Dkt. 109-1, Ex. H]** at36:17-21; 199-200; 50:18-52; 84:16-19; 94-95; 96:6-12; 97:1-13; 97:19-99; 103:3-8.

However, the fact that Shields fails to recognize the magnitude of the denigrating comment is of no consequence. The focus is the effect had on a minority female in Strickland. This standard properly gives recognition to the persistence of racism in American society, which often cause a wide divergence between African-American people's view of appropriate conduct and that of white people. Without such a standard, ingrained notions on the part of employers and the courts of what is acceptable behavior will be sustained. *Foreword: Justice Engendered*, 101 Harv.L.Rev.10, 58. Here, Defendant Shields wants this Court to remove a question of fact from the jury on summary judgment. To do so, this Court would have to determine that no reasonable jury could find the conduct at issue severe or pervasive. In this case, it is certainly possible that a reasonable jury could find that the conduct was pervasive or severe based on these

facts. This Court correctly denied summary judgment on this issue and should deny Defendant Shields' motion to reconsider.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs request that this Court deny Defendant's motion to reconsider.

Date: July 26, 2021

                                          Respectfully submitted,

                                          /s/ Daniel Q. Herbert

                                          /s/ Kelly A. Krauchun

                                          The Herbert Law Firm
                                          206 S. Jefferson, Suite 100
                                          Chicago, IL 60661
                                          (312) 655-7660
                                          Dan.herbert@danherbertlaw.com
                                          Kelly.krauchun@danherbertlaw.com
                                          Terri.ryan@danherbertlaw.com

4852-3596-9523, v. 1

## **CERTIFICATE OF SERVICE**

      I, the undersigned, being first duly sworn upon oath, depose, and say that I caused to be served the foregoing document by electronically filing the same with the Clerk for the U.S. District Court for the Northern District of Illinois, Eastern Division, a copy of which was then forwarded to each attorney of record by CM/ECF on July 26, 2021.

                                                    RESPECTFULLY SUBMITTED,

Dated: July 26, 2021                    By:   /s/ Daniel Q. Herbert

                                                   /s/ Kelly A. Krauchun

                                                  The Herbert Law Firm
                                                  206 S. Jefferson, Suite 100
                                                  Chicago, IL 60661
                                                  (312) 655-7660
                                                  Dan.herbert@danherbertlaw.com
                                                  Kelly.krauchun@danherbertlaw.com